**ACADIAN GAS PIPELINE SYSTEM, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 88–4502.

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1989.

Priscilla A. Mims, Paul E. Goldstein, Philip R. Telleen, Lombard, Ill., for Acadian Gas Pipeline Sys.

Tim Abendroth, Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., for F.E.R.C.

Before CLARK, Chief Judge, BROWN, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Acadian Gas Pipeline System appeals an order of the Federal Energy Regulatory Commission (Commission) requiring Acadian to file petitions for rate approval under section 284.123(b)(2) of Commission regulations. The Commission's exegesis of this section is that it requires a separate petition for rate approval for each newly instigated service despite previous approval of a systemwide rate. Because we find that this interpretation is arbitrary and capricious, we vacate the Commission's order and remand for further proceedings consistent with this opinion.

## REGULATORY OVERVIEW

Section 311(a)(2) of the Natural Gas Policy Act (NGPA) vests the Commission with the power to authorize an intrastate pipeline to transport natural gas on behalf of interstate pipelines without triggering the Commission's jurisdiction under the Natural Gas Act (NGA). The rates the intrastate pipeline may charge for this service are subject to a determination of being fair and equitable. Specifically, a regulation initially adopted by the Commission in 1978, 18 C.F.R. § 284.123 (1987), prescribes the methods available for calculating rates for the transportation of natural gas. Section 284 sets forth a bifurcated system whereby the intrastate pipeline may either elect one of several forms of state-based rates [1] or, if the pipeline chooses not to employ one of the enumerated state-based methods, the pipeline may file for Commission approval of the proposed rates and charges pursuant to section 284.123(b)(2). This section indicates that if the pipeline

> does not choose to make any electon under paragraph (b)(1) of this section, it shall apply for Commission approval, by order, of the proposed rates and charges by filing with the Commission the proposed rates and charges, and information showing the proposed rates and charges are fair and equitable.

In 1984, section 284 was amended to specify that whenever a pipeline elects to apply to the Commission for approval of its proposed rate, it must accompany its filing with a fee. 18 C.F.R. § 284.123(b)(2)(i) (1987).

## THE INSTANT CASE

Acadian is an intrastate pipeline operating in southern Louisiana. Acadian (and its predecessor Sugar Bowl Gas Corporation) have been providing section 311 transportation service since 1980. Sugar Bowl first sought approval for its section 311 transportation service in 1980. Sugar Bowl filed two separate applications pursuant to section 284.123(b)(2) for two discrete transactions involving section 311 transportation service for two interstate pipelines. The Commission accepted and approved a rate of 15.5 cents per MMBtu. *Sugar Bowl*

---

1. Section 284.123 provides in pertinent part:

    **§ 284.123 Rates and charges.**

    (a) *General rule.* Rates and charges for transportation of natural gas authorized under § 284.122(a) shall be fair and equitable as determined in accordance with paragraph (b) of this section.

    (b) *Election of rates.* (1) Subject to the conditions in §§ 284.8 and 284.9 of this chapter, an intrastate pipeline may elect to:

    (i) Base its rates upon the methodology used:

    (A) In designing rates to recover the cost of gathering, treatment, processing, transportation, delivery or similar service (including storage service) included in one of its then effective firm sales rate schedules for citygate service on file with the appropriate state regulatory agency; or

    (B) In determining the allowance permitted by the appropriate state regulatory agency to be included in a natural gas distributor's rates for citygate natural gas service; or

    (ii) To use the rates contained in one of its then effective transportation rate schedules for intrastate service on file with the appropriate state regulatory agency which the intrastate pipeline determines covers service comparable to service under this Subpart.

    (2)(i) If an intrastate pipeline does not choose to make any election under paragraph (b)(1) of this section, it shall apply for Commission approval, by order, of the proposed rates and charges by filing with the Commission the proposed rates and charges, and information showing the proposed rates and charges are fair and equitable. Each petition for approval filed under this paragraph must be accompanied by the fee set forth in § 381.403 or by a petition for waiver pursuant to § 384.106 of this chapter. Upon filing the petition for approval, the intrastate pipeline may commence the transportation service and charge and collect the proposed rate, subject to refund.

*Gas Corp.*, 18 FERC at 62,284 (1984). Thereafter, Sugar Bowl, and later Acadian,[2] continued to utilize the 15.5 cent rate, and to report such rate to the Commission in the initial reports filed to establish new services.[3] Until the transactions involved in the case sub judice occurred, neither Acadian nor Sugar Bowl filed separate petitions for rate approval for each new service provided.

On May 22, 1985, the Commission issued an order authorizing an extension of another section 311 service.[4] In this order, the Commission stated that because three years had passed since the last review of Acadian's rate, a new rate proceeding was being instituted in order to determine if the 15.5 cent per MMBtu rate remained fair and equitable. Additionally, the order consolidated all of Acadian's then on-going section 311 transportation services for which initial reports had been filed. The Commission indicated that further transportation in the consolidated dockets would be subject to refund based on the outcome of the rate proceeding being instituted. The Commission, citing *Howell Pipeline Co., Inc.*, 23 FERC at 61,267 (1983), reiterated the Commission's already established policy requiring triennial review of rates determined pursuant to section 284.123(b)(2). *Acadian Gas Pipeline System*, Docket Nos. ST83–442–001, *et al.*, 31 FERC at 61,195 (1985).

Acadian filed for rehearing of the ST83–442–001 order, requesting that the rate proceeding be held in abeyance pending the outcome of the Commission's ruling on Acadian's rate election in another transaction. Without addressing the merits of Acadian's request for rehearing, the Commission entered a letter order on September 18, 1985, in Docket Nos. ST83–442–001 *et al.*, which approved the 15.5 cent system-wide rate and extinguished any existing refund obligation. The order accepted Acadian's proposed rate and indicated that "Acadian may charge a transportation rate of up to 15.5 cents per MMBtu for transportation in all Section 311 transactions." The order further admonished that "[w]ithin three years from the date of this order, Acadian shall file an application pursuant to Section 284.123(b)(2) of the regulations to justify its existing system-wide transportation rate approved herein or to justify a changed system-wide transportation rate." *Acadian Gas Pipeline System*, 32 FERC ¶ 61,499 at 62,141 (1985).

Shortly before the issuance of the September 18 letter order,[5] Acadian filed initial reports for new section 311 transportation services. On October 9, 1985, the Director sent a letter to Acadian stating that if Acadian was not eligible for the self-implementing state rate options described in section 284.123(b)(1), then Acadian must file a petition for rate approval pursuant to § 284.123(b)(2). Acadian responded by citing to the September 18 letter order: it argued that since the Commission had just approved a 15.5 cent rate, the petition for rate approval was not necessary. Thereafter, the Director issued an order rejecting the initial reports filed by Acadian for the reason that the filing was not consistent with Commission regulations since no

---

**2.** Sugar Bowl sold its intrastate pipeline assets on December 30, 1983.

**3.** "Initial Reports" are required by 18 C.F.R. § 284.126 (1987). This section indicates that within 30 days after commencing new transportation services authorized by part 284, the pipeline files a statement describing the pipeline's existing operations, along with operational details, such as the name of the shipper, the dates of service, the quantity of gas, and the rate, of the new service to be provided.

**4.** Prior to November 1, 1985, § 311 service was authorized for a limited period. In order to continue service, an intrastate pipeline had to either file an extension report or file an applica-

tion to continue a service that had been authorized in a specific Commission order.

**5.** On May 13, Acadian filed an initial report related to the transportation of natural gas on behalf of Bridgeline Gas Distribution Company. On August 21, 1985, Acadian filed an initial report related to the transportation of gas on behalf of LGS Intrastate, Inc. Shortly after the issuance of the order, on October 1, 1985, Acadian filed an initial report concerning transportation services for Mid Louisiana Gas Company. The reports reflected that Acadian charged rates of 8.0 cents per MMBtu, 10.0 cents per MMBtu, and 15.5 cents per MMBtu respectively for these services.

petition for rate approval was included.[6] Acadian appealed the Director's action to the Commission, which denied the appeal. *Acadian Gas Pipeline System*, 35 FERC ¶ 61,132 (1986). On May 20, 1988, the Commission rejected Acadian's application for rehearing, *Acadian Gas Pipeline System*, 43 FERC ¶ 61,296 (1988), and this appeal followed.

## SUMMARY OF THE ISSUES

Acadian contends that the Commission erred on either of two alternative grounds. First, it argues that the Commission's holding that section 284.123(b)(2) requires petitions for rate approval be filed for each new section 311 transportation service, even where a systemwide rate has been approved, is a new substantive rule of general applicability to which the Administrative Procedure Act (APA) and the Regulatory Flexibility Act (RFA) apply. Alternatively, Acadian argues that the Commission's interpretation of that section is inconsistent with past practice and serves no valid purpose; because the Commission failed to justify its departure from past practice, the new interpretation cannot be imposed against Acadian.

■ The function of judicial review of agency action is to determine the authority of the agency, compliance by the agency with the appropriate procedural requirements, and to review any claim that agency action is arbitrary, capricious, or an abuse of discretion.[7] *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Because we ultimately agree with Acadian that the Commission's newly stated interpretation is an arbitrary, capricious departure from past practice, we decline to reach the issue of APA or RFA applicability.

## DISCUSSION

■ It is well settled that an agency's interpretation of its own regulations is owed substantial deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Clevepak Corp. v. E.P.A.*, 708 F.2d 137 (4th Cir.1983). While the judiciary begins with a presumption that agency action is valid, a court's review should not be categorized as a summary endorsement of the agency's actions. A reviewing court does not serve the function of a mere rubberstamp of agency decisions. *See United States v. Garner*, 767 F.2d 104 (5th Cir.1985); *Lead Industries Assoc., Inc. v. E.P.A.*, 647 F.2d 1130 (D.C.Cir.1980); *Diplomat Lakewood, Inc. v. Harris*, 613 F.2d 1009 (D.C.Cir.1979). Rather, a court's review of agency actions should be searching and careful. *NAACP v. FCC*, 682 F.2d 993 (D.C.Cir.1982). While an agency interpretation of a regulation is entitled to due deference, the interpretation must rationally flow from the language of the regulation, and any departure from past interpretations of the same regulation must be adequately explained and justified.

■ Where an agency has acted arbitrarily or capriciously, a reviewing court is bound to set aside the agency action. Where an agency fails to distinguish past practice, its actions may indicate that lack of reasoned articulation and responsibility that vitiates the deference the reviewing court would otherwise show. *See, e.g., Local 777, Democratic Union Organizing Committee v. NLRB*, 603 F.2d 862 (D.C. Cir.1978).

In the instant case, the Commission has failed to acknowledge even that a departure from past practice has occurred despite acknowledging that, prior to the transactions involved in the instant case, Acadian was not required to file separate

---

**6.** The Director set forth three reasons for this rejection. (1) The Commission's approval of the systemwide rate was not intended as a waiver of the filing requirement, (2) the Director's action was not inconsistent with other action addressing § 311 transactions, and (3) his action was without prejudice to Acadian filing new initial reports (with the appropriate filing fees) once petitions for rate approval were filed.

**7.** The general standard for reviewing administrative actions is provided in the APA, 5 U.S.C. § 701 *et seq.* Section 706 provides, in pertinent part, that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

petitions for rate approval in order to instigate new section 311 services. Rather, the Commission, in its Order Denying Rehearing, pointed to an underlying change in the filing fee requirements as justification for requiring separate petitions for rate approval. The Commission stated:

> In a number of cases prior to institution of fees for petitions for rate approval on October 9, 1984, initial reports required [at the] commencement of each section 311 transportation were construed by the Commission as petitions for rate approval. Since there were no fees then, it made no difference whether one or two filings were received. Before the fee rules became effective on October 9, 1984, there was no strong regulatory purpose to be served by requiring the

separate filing if an initial report was filed.... The Director's decision in these past cases to construe the initial reports as petitions for rate approval was made solely for the benefit of Acadian and was consistent with the requirement of the Commission's regulations that a petition for rate approval must be filed for each new transportation service....

Once the fees rules took effect, the practice of treating initial reports as petitions for rate approval ceased.[8]

█ We cannot agree with the Commission that no change in past practice has occurred in light of the practical and tangible effect that the new interpretation will have on intrastate pipelines subject to systemwide rates. The Commission's reliance on the post hoc justifications described

---

**8.** There is no indication in the record that the Commission ever informed Acadian that the initial reports were being simultaneously construed as petitions for rate approval. Furthermore, the Commission made no attempt to give affected parties advance notice of the new practice of not accepting the dual purpose filings on which the current argument is based. The Commission relies heavily on its earlier pronouncement in *Phenix Transmission Co.*, 35 FERC ¶ 61,124 (1986) (emphasis in original):

> If a pipeline does not have a rate approved under section 284.123(b)(1), section 284.123(b)(2) provides that it:
>
>> *shall* apply for Commission approval ... of the proposed rates and charges.... Each petition for approval filed under this paragraph must be accompanied by the fee set forth in § 381.403 ... *Upon filing the petition* for approval, the intrastate pipeline *may commence the transportation service* and charge and collect the proposed rate, subject to refund. (emphasis added)
>
> Because the authorization to commence each "transportation service" depends on the filing of a petition, we expect pipelines that do not have a section 284.123(b)(1) rate to file a petition under section 284.123(b)(2) for each transaction.

The Commission's expectation of a petition for each transaction is not well supported. First, as we have already noted, such an expectation has not been consistently enforced. Furthermore, the regulation itself does not indicate that a petition must be filed for each transaction. Rather it indicates that *each petition that is filed* must be accompanied by the appropriate filing fee. Compliance was consequently achieved with the approval of the 15.5 cents per MMBtu rate; no further petitions for rate approval were necessary until that rate became subject to review.

The history of the proposed and final rules issuing § 284.123 supports the proposition that, in a situation where a systemwide rate has been approved, separate petitions for rate approval are not required. Section 284.123(b)(2) was not included in the original proposed rule to implement § 311(a)(2) of the NGPA. 32 FERC ¶ 61,499 (1985). When the provision did appear in 1978, its purpose was to provide a means for intrastate pipelines to utilize a rate that was "fair and equitable." No further discussion in any of the proposed or final rulemakings in any way indicates that the Commission intended such petitions were to be filed for each new service, as opposed to any service for which a new, higher rate was to be charged. *See* Order No. 46, 44 Fed.Reg. 52,179 (September 7, 1979), [Reg. Preambles 1977–81] FERC Stats. & Regs. ¶ 30,081; Order on Rehearing of Order No. 46, 44 Fed.Reg. 66,789 (November 21, 1979), [Reg. Preambles 1977–81] FERC Stats. & Regs. ¶ 30,104; Order No. 394, 49 Fed.Reg. 35,367 (September 7, 1984) [Reg. Preambles 1982–85] FERC Stats. & Regs. ¶ 30,593; Order No. 436, 50 Fed.Reg. 42,408 (October 18, 1985), [Reg. Preambles 1982–85] FERC Stats. & Regs. ¶ 30,655; Order No. 436–A, 50 Fed.Reg. 52,217 (December 23, 1985), [Reg. Preambles 1982–85] FERC Stats. & Regs. ¶ 30,675.

The language quoted by the Commission does show that filing fees must be submitted with each petition for rate approval; Acadian does not dispute that proposition. Rather, the issue addresses when petitions for rate approval are required.

The propriety of this interpretation of the regulatory history is supported by the section's regulatory history and Commission's past practice of not requiring separate petitions for rate approval.

above constitutes nothing more than an attempt to argue semantics rather than actions and effects. Judicial deference is tempered when an agency ruling is inconsistent with a prior pronouncement or prior actions. The flexibility which will be afforded an agency's interpretation does not permit this Court to sanction each new gloss placed by an agency. *See Leone v. Mobil Oil Corp.*, 523 F.2d 1153 (D.C.Cir. 1975).

Our holding that the Commission acted arbitrarily and capriciously by rejecting Acadian's initial reports is based primarily on our conclusion that the Commission has, without a sufficiently articulated justification, impermissibly deviated from past practice. We are cognizant that regulatory agencies do not establish perpetual rules of conduct; some latitude must be afforded an agency in order for it to adapt its rules and policies to changing circumstances. *See Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). However, this latitude is tempered by the settled proposition that

> an agency must provide a reasoned explanation for any failure to adhere to its own precedents.... [A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed and not casually ignored, and if an agency glosses over or swerves from prior precedent without discussion it may cross the line from the tolerably terse to the intolerably mute.

*Grace Petroleum Corp. v. FERC*, 815 F.2d 589, 591 (10th Cir.1987) (citations omitted).

Recognizing that the Commission has deviated from its past practice by requiring separate petitions for rate approval for each new customer, the justification, or reason, for this change in practice is apparent—the Commission sought to collect more fees. After the Commission instituted a policy of recouping all of its costs through fee collection, it soon realized that the filing fee fixed for a petition for rate approval was exorbitant. It obviously sought to conceal this problem by spreading the cost over a number of filings for the same commission service—rate approval. The Commission's purpose is easily discernible from the following statement in Commission's brief: "Once [the] fees rules became effective on October 9, 1984, it was necessary to enforce [the requirement of section 284.123 of] filing separate rate approval applications in order to recoup the total fee levels contemplated for the service provided by the Commission and to avoid distorting new fee levels to an artificially high per-unit level." This rationale is insufficient justification for the change in procedure. If fee collection presents a problem, the Commission may address it in any reasonable straightforward manner. The Commission is not permitted, however, to arbitrarily alter an unrelated practice solely to mask the true difficulty.

The Commission argues that the approval of a "system-wide rate for a three-year period does not waive the filing requirements. Rather, the three year review requirement puts the company on notice that the Commission will re-examine the rate at least every three years to ensure that the rates remain fair and equitable." Order Denying Appeal at 2. This language is inconsistent with the September 18, 1985, order which approved a 15.5 cent per MMBtu rate for "*all* Section 311 transactions." (emphasis added). The Commission's stated policy has been that rates previously approved under § 284.123(b)(2) be reviewed every three years. The September 18 order is consistent with this past practice.

The undue hardship that this retrospective rejection of the initial reports places on Acadian further supports our holding in this matter. As the Ninth Circuit noted in *Cities of Anaheim, Riverside, Banning, Colton and Azusa v. FERC*, 723 F.2d 656, 659 (9th Cir.1984), "agencies may not impose undue hardship by suddenly changing direction, to the detriment of those who have relied on past policy." The proposed filing fees for adding the three new customers in this case will, alone, total almost $15,000.

CONCLUSION

The Commission's position in this case is not supported by the history of the regulation in question. Furthermore, the plain language of the statute gives no indication that, once a systemwide rate has been approved, a new petition must be filed for each new section 311 transaction. The Commission's past practice vis a vis Acadian supports our conclusion that the Commission acted arbitrarily by rejecting the initial reports.

While the deference afforded an agency's interpretation of its own regulations is great, in a case such as this, where neither past practice nor the history of the regulation support the Commission's interpretation, that deference is lessened considerably. We are constrained to hold that the Commission in this case acted arbitrarily in denying Acadian's initial reports; the case is reversed and remanded.

REVERSED AND REMANDED.