**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**February 28, 2003**

Charles R. Fulbruge III
Clerk

REVISED APRIL 8, 2003
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-60945
con. w/02-60126
_____

MANUEL NAVARRO-MIRANDA

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL

Respondent

_____

Petitions for Review from the Board of Immigration Appeals

_____

Before KING, Chief Judge, and DAVIS, Circuit Judge, and
ROSENTHAL, District Judge.[*]

KING, Chief Judge:

Petitioner Manuel Navarro-Miranda seeks review of two
decisions by the Board of Immigration Appeals concerning his
deportation following a felony conviction for driving while
intoxicated. We deny Navarro-Miranda's petition for review of
his motion to reopen his removal proceedings. As for Navarro-

_____

[*] District Judge of the Southern District of Texas, sitting
by designation.

Miranda's petition for review of the denial of his motion to reconsider, we dismiss it as untimely filed.

I.   FACTS AND PROCEDURAL BACKGROUND

Manuel Navarro-Miranda ("Navarro") was convicted on January 22, 1997, of driving while intoxicated.  This was Navarro's third DWI conviction in a six-year period, making it a felony under Texas law.  TEX. PENAL CODE ANN. § 49.09(b) (1995).  The Immigration and Naturalization Service ("INS") initiated removal proceedings against Navarro in November 1998.  The INS alleged that Navarro was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because his DWI conviction was an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(F).

At a hearing, Navarro conceded that he was removable under § 1227(a)(2)(A)(iii).  The immigration judge issued an order of removal concluding that Navarro's DWI conviction was an aggravated felony.  Navarro appealed this decision to the Board of Immigration Appeals ("BIA" or "the Board"), which agreed that the DWI conviction was an aggravated felony and affirmed the decision.  Navarro sought no further review of the decision and was ultimately deported to Mexico.

On September 25, 2001, Navarro filed a motion with the BIA requesting the Board to reopen his case sua sponte based on the Fifth Circuit's intervening decision in United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001).  In Chapa-Garza, we held that driving while intoxicated was not an aggravated felony.  Id.

at 927. Navarro argued that, because he had been deported on the grounds that his DWI conviction was an aggravated felony, the Board should now reopen his removal proceedings and, in light of this change in the law, grant him relief from the removal order.

On November 6, 2001, the BIA denied Navarro's petition as moot. The Board held that it lacked jurisdiction to consider a motion to reopen or a motion to reconsider made by a person who has already been deported. See 8 C.F.R. § 3.2(d) (2002):

> A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

Id. Navarro timely petitioned this court for review of that decision.

Navarro also filed with the Board a motion to reconsider its decision denying his motion to reopen. On January 25, 2002, the Board declined to reconsider its decision. The Board reasoned that, at the time Navarro's final order of removal was issued, his DWI conviction was considered to be an aggravated felony. Accordingly, his removal order was legally executed and his removal proceedings were completed. As a result, Navarro's motion to reopen was ineffective because he was moving to reopen proceedings which were no longer pending. The Board also noted that it lacked the authority to compel the INS either to "re-

3

admit the respondent to the United States as a lawful permanent resident or to parole him into this country so that he can seek reinstatement of his lawful permanent resident status."

Navarro appeals this decision as well. His petition for review was mailed on February 21, 2002. However, it was not received and filed until February 26, 2002.

## II. NAVARRO'S MOTION TO REOPEN THE REMOVAL PROCEEDINGS

At the time of his original deportation hearing, Navarro conceded that he was removable under the law that made his DWI conviction an aggravated felony. After the Board issued its removal order, Navarro could have petitioned this court for review of the decision; he failed to do so. Once Navarro was deported, therefore, his removal proceedings were completed and final. See Stone v. INS, 514 U.S. 386, 398 (1995) ("Deportation orders are self-executing orders, not dependent upon judicial enforcement.").

Notwithstanding the finality of his proceedings, Navarro argues that the Board should reopen them on its own motion under § 3.2(a) and grant him relief. See 8 C.F.R § 3.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."). Navarro concedes that, because he has already been deported, the BIA lacks jurisdiction to consider any motion filed on his behalf to reopen his removal proceedings. See 8 C.F.R. § 3.2(d) (2002). However, Navarro argues that the intervening change in the law imposes a duty on

4

the BIA to reopen the case on its own motion and reexamine the removal order in light of Chapa-Garza.

The Board considered Navarro's motion to be "moot"; the execution of the removal order resolved any remaining case or controversy between Navarro and the INS. As a result, the Board interpreted its § 3.2(a) power to reopen on its own motion as being subject to the § 3.2(d) requirement that the alien not have been deported. Because the Board considers § 3.2(d) to be jurisdictional, it concluded that Navarro's deportation deprived the Board of any further jurisdiction over motions brought relating to his removal proceedings.

Thus, the Board has concluded that § 3.2(d) trumps the power granted by § 3.2(a) where the alien has been deported; Navarro challenges this interpretation. The question of the interplay between § 3.2(a) and § 3.2(d) has not been considered in any jurisdiction. "Courts grant an agency's interpretation of its own regulations considerable legal leeway." Barnhart v. Walton, 535 U.S. 212, 217 (2002). However, "[w]hile an agency interpretation of a regulation is entitled to due deference, the interpretation must rationally flow from the language of the regulation." Acadian Gas Pipeline Sys. v. FERC, 878 F.2d 865, 868 (5th Cir. 1989); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context.").

After examining the regulations closely, we conclude that the BIA's interpretation of the provisions of § 3.2 is reasonable. The BIA may reopen on its own motion "in exceptional circumstances." In re J– J–, 21 I. & N. Dec. 976 (1997). The BIA has previously taken this step in response to a change in the law concerning the alien's removable offense. See In re Vasquez-Muniz, 23 I. & N. Dec. 207 (2002) (reopening decision sua sponte where Ninth Circuit subsequently reclassified alien's conviction for possession of a weapon by a felon as an aggravated felony); see also In re X– G– W–, 22 I. & N. Dec. 71 (1998) (reopening sua sponte after enactment of IIRIRA significantly changed applicable asylum law). In neither case, though, had the alien been deported at the time the Board reopened the case; motions to reconsider pursuant to § 3.2(b) (Vasquez-Muniz) and § 3.2(c) (X–G– W–) were untimely filed, and the Board exercised its § 3.2(a) power to consider the motions.

Furthermore, § 3.2(a) is labeled as the "General" provision of the statute. Section 3.2(d) deals specifically with cases in which the alien has already been deported. As a fundamental rule of statutory interpretation, specific provisions trump general provisions. In re Nobleman, 968 F.2d 483, 487 (5th Cir. 1992). Thus, the BIA's reasoning that the prohibition on motions to reopen stated in § 3.2(d) overrides its § 3.2(a) power to reopen on its own motion is a reasonable interpretation of the language of these two regulations.

6

The BIA's construction of § 3.2(d) as overriding § 3.2(a) such that the Board lacks jurisdiction to reopen the removal proceedings of a deported alien is a reasonable agency interpretation of the regulations in question. The Board's conclusion that the case is moot is consistent with the well-established principle that "a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule." Teague v. Lane, 489 U.S. 288, 308 (1989). We therefore deny Navarro's petition for review of his motion to reopen.

## III. NAVARRO'S CLAIM THAT HE SHOULD BE AFFORDED RELIEF UNDER THE DECISION IN INS v. ST. CYR

Navarro also claims that he should be eligible to apply to the Attorney General for discretionary relief. Prior to 1996, an alien subject to a removal order could, so long as he met certain threshold requirements, petition the Attorney General for discretionary relief from that order. 8 U.S.C. § 1182(c) (1994). However, in 1996, the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), combined with the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), narrowed the scope of the Attorney General's power to conduct such discretionary review. INS v. St. Cyr, 533 U.S. 289, 295 (2001). Inter alia, the Attorney General now lacked the power to review removal orders issued on the grounds that the alien had committed an aggravated felony. Id. at 295-96.

7

In St. Cyr, though, the Supreme Court held that § 1182(c) remained available to aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for [§ 1182(c)] relief at the time of their plea under the law then in effect." Id. at 326. Navarro argues that he would have met the requirements and that, because he entered a guilty plea, we should grant him the right to petition the Attorney General for relief. However, unlike the petitioner in St. Cyr, Navarro's removal order has already been executed.

St. Cyr is silent on the question of whether aliens who have already been deported should be eligible for § 1182(c) relief. The petitioner in St. Cyr was a resident alien applying for habeas corpus relief from a deportation order; as discussed above, because the petitioner had not yet been deported, his removal proceedings were not yet closed. Nothing in the St. Cyr decision makes it retroactively applicable to closed cases. As such, the general principle of non-retroactivity controls; because Navarro's removal was no longer still open on direct review, any change in the law concerning eligibility for discretionary waiver under § 1182(c) does not apply to Navarro's case.[1] See Teague, 489 U.S. at 306-07.

_____

[1] The Department of Justice is currently circulating a proposed rule in response to the St. Cyr decision which would delineate which aliens may apply for relief under the former § 1182(c). See Section 212(c) Relief for Aliens With Certain

8

IV.  NAVARRO'S PETITION FOR REVIEW OF THE DENIAL OF HIS MOTION
     FOR RECONSIDERATION

An alien has thirty days from the date of the final order of removal to file a petition for review.  8 U.S.C. § 1252(b)(1) (2000).  This deadline is jurisdictional.  Guirquis v. INS, 993 F.2d 508, 509 (5th Cir. 1993).

While Navarro mailed his petition for review of the denial of his motion for reconsideration to this court within the thirty-day deadline, that petition was not received and filed until the deadline had passed.  The statute clearly states that the petition must be "filed" within the thirty-day period.  In Guirquis, the petitioner gave his petition to an immigration detention officer to be mailed within the statutory period.  Id. at 509.  When the petition did not arrive at the clerk's office to be filed until one day past the statutory period, we found it to be untimely, refusing to apply the more lenient rules available for pro se prisoners filing a notice of appeal. Houston v. Lack, 487 U.S. 266, 276 (1988) (finding timely petition for appeal given by pro se prisoner to prison official within the statutory period).

_____

Criminal Convictions Before April 1, 1997, 67 Fed. Reg. 52,627 (proposed August 13, 2002) (to be codified at 8 C.F.R. § 3.44). Adoption of this new regulation could affect the retroactivity of the St. Cyr decision; however, given that the rule is still in the proposal stage, we decline to interpret or otherwise rule on it.  According to the law as it stands at this time, Navarro is ineligible to apply for relief under the rule announced in St. Cyr.

9

Given that we were unwilling to extend the period for a pro se petitioner in detention, we see no reason to do so for a petitioner who was assisted by counsel.  Navarro's petition for review of the Board's denial of reconsideration of his motion to reopen his removal proceedings is dismissed as untimely.

V.    CONCLUSION

We DENY Navarro's petition for review of the Board's order denying his motion to reopen his removal proceedings.  We DISMISS as untimely Navarro's petition for review of the denial of his motion for reconsideration.