United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 17, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60158

Summary Calendar

_____

FELIPE NEPONUCENO GALVAN-ESCOBAR

             Petitioner

     v.

ALBERTO R GONZALEZ, U S ATTORNEY GENERAL

             Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals
No. A30 232 460

_____

Before KING, Chief Judge, and WIENER and DeMOSS, Circuit Judges.

PER CURIAM:[*]

     Petitioner Felipe Neponuceno Galvan-Escobar ("Galvan")

petitions the court for review of a final order of the Board of

Immigration Appeals finding him removable as charged and denying

his application for adjustment of status.  For the following

_____

     [*]      Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

-1-

reasons, we dismiss the petition for review.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Galvan, a native and citizen of Mexico, became a permanent resident of the United States on September 10, 1973. In May 1997, he was convicted in El Paso, Texas, for the third-degree felony offense driving while intoxicated ("DWI") and received a three-year sentence.  On February 18, 1999, while still serving his sentence with the Texas Department of Corrections in Huntsville, Texas, the Immigration and Naturalization Service ("INS") served Galvan with a Notice to Appear, charging him with removability pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA").[1]  8 U.S.C. § 1227(a)(2)(A)(iii).  After a brief individual hearing on May 5, 1999, the Immigration Judge ("IJ") found Galvan removable as charged, concluding that the DWI conviction constituted a "crime of violence" under § 101(a)(43)(F) of the INA.  8 U.S.C. § 1101(a)(43)(F).  The IJ further held that Galvan was ineligible for cancellation of the removal order given the nature of the charges.

On October 15, 1999, a three-member panel of the Board of Immigration Appeals ("BIA") affirmed the IJ's decision, specifically relying on In re Puente-Salazar, 23 I & N. Dec. 336,

---

[1]   Section 237(a)(2)(A)(iii) classifies any alien "who is convicted of an aggravated felony at any time after admission" as subject to deportation upon order of the Attorney General.

Inter. Dec. 3412, 1999 WL 770709 (B.I.A. 1999), and Camacho-Marroquin v. I.N.S., 188 F.3d 649 (5th Cir. 1999), which held that a DWI conviction constituted a removable offense. The BIA also found that the conviction precluded Galvan from obtaining an adjustment of status in conjunction with a waiver under § 212(h) of the INA.[2] 8 U.S.C. § 1182(h). Galvan was removed to Mexico on October 22, 1999, at which time he was informed by immigration officials that his resident alien card would no longer be valid for entry into the United States.

Galvan returned to the United States on September 10, 2002, using his previously issued resident alien card to evade detection at the border. After the INS detected his presence, Galvan admitted in a sworn statement that he was adequately informed upon his deportation in 1999 that he could no longer use his resident alien card to reenter the United States. On February 20, 2003, the INS issued a Notice to Appear, charging Galvan with removability pursuant to § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), for fraudulently or wilfully misrepresenting a material fact to procure entry under § 212(a)(6)(C)(i) of the INA. 8 U.S.C. § 1182(a)(6)(C)(i). The IJ found Galvan removable

_____

[2] Section 212(h) states, in relevant part, that "[n]o waiver shall be granted . . . in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . the alien has been convicted of an aggravated felony . . . ." 8 U.S.C. § 1182(h).

-3-

and pretermitted his application for adjustment of status under § 245, 8 U.S.C. § 1255, because the record did not establish that he had an approved immediate relative visa available at the time the application was filed. On February 3, 2005, the BIA affirmed the conclusions of the IJ and dismissed the appeal. This court subsequently denied the petitioner's motion for stay of deportation pending review. Galvan then filed this timely appeal to challenge the BIA's decision.[3]

## II. DISCUSSION

### A. Standard of Review

We review the BIA's legal conclusions de novo. Long v. Gonzales, 420 F.3d 516, 519 (5th Cir. 2005). This court will, however, defer to the BIA's interpretation of immigration statutes unless there exist compelling indications that the BIA's interpretation is incorrect. Campos-Guardado v. I.N.S., 809 F.2d 285, 289 (5th Cir. 1987) (citing Guevara Flores v. I.N.S., 786 F.2d 1242, 1250 n.8 (5th Cir. 1986)). In reviewing the BIA's factual findings, we determine whether they are supported by

_____

[3] Galvan does not challenge the portions of the BIA's decision denying his application of adjustment of status under § 245, 8 U.S.C. § 1255, nor the BIA's denial of his waiver of the application pursuant to § 212(h), 8 U.S.C. § 1182(h). Indeed, our jurisdiction does not extend to the review of denials of certain forms of discretionary relief specified in the statute. See 8 U.S.C. § 1252(a)(2)(B)(i) (precluding judicial review of "any judgment regarding the granting of relief under section 1182(h) . . . or 1255 of this title"); Manzano-Garcia v. Gonzales, 413 F.3d 462, 466 (5th Cir. 2005). We therefore limit our review to Galvan's collateral challenge of his prior removal order.

"substantial evidence" in the record. Li v. Gonzales, 420 F.3d 500, 410 (5th Cir. 2005). We accept the factual findings of the BIA "unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise." Mikhael v. I.N.S., 115 F.3d 2999, 304 (5th Cir. 1997).

**b.  Collateral Challenge of the Prior Removal Order**

Galvan contends that his prior removal proceeding in 1999 was fundamentally unfair and violated his due process rights. His collateral attack on the proceedings is primarily based upon a change in the law from this court's decision in United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001) issued after he was deported. Galvan maintains that the IJ's reliance on an erroneous interpretation of the law tainted his prior removal proceedings, rendering direct review of the IJ's order effectively unavailable and causing him to suffer actual prejudice.

Galvan's challenge to his prior deportation order is governed by 8 U.S.C. § 1326(d) and the Supreme Court's decision in United States v. Mendoza-Lopez, 481 U.S. 828 (1987). See, e.g., United States v. Lopez-Ortiz, 313 F.3d 225, 228 (5th Cir. 2002); United States v. Benitez-Villafuerte, 186 F.3d 651, 658-59 (5th Cir. 1999). An alien who illegally reenters the United States may not challenge the validity of his deportation order unless he demonstrates: (1) exhaustion of administrative

remedies; (2) that the deportation proceedings deprived the alien of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair.  See 8 U.S.C. § 1326(d).  The Supreme Court in Mendoza-Lopez held that due process requires review of deportation orders, noting that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Mendoza-Lopez, 481 U.S. at 838.

Because the government does not allege that Galvan has failed to exhaust his administrative remedies, we proceed to examine whether the deportation proceedings unfairly deprived him of meaningful judicial review.  Galvan's argument, that the substantive change in the law following the court's holding in Chapa-Garza made his deportation proceedings fundamentally unfair in the first place, misapprehends the protections of § 1326(d) and Mendoza-Lopez.  Fundamental fairness is unquestionably a "question of procedure."  United States v. Lopez-Ortiz, 313 F.3d 225, 230 (5th Cir. 2002).  Removal hearings, being civil in nature, accord less stringent procedural protections to aliens than those available to a criminal defendant.  Id.  The Supreme Court merely requires an alien facing deportation proceedings to be provided with (1) notice of the charges against him, (2) a

hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard. Id. Galvan's challenge relies solely upon a change in the law subsequent to his removal proceedings, which by all accounts in the record were fairly conducted under the state of the law at the time. Therefore, we find no reason to retroactively apply the new interpretation of the statutory language announced in Chapa-Garza to Galvan's prior deportation order.[4] See Hernandez-Rodriguez v. Pasquarell, 118 F.3d 1034, 1042 (5th Cir. 1997) (finding that retroactive application "implicates concerns not present when the change occurs while the decision is pending before the initial tribunal or on direct appeal"); Reynoldsville Casket v. Hyde, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed.")

As Galvan argues and the government readily concedes, in Chapa-Garza, the court overruled its earlier decision in Camacho-Marroquin v. I.N.S., 188 F.3d 649 (5th Cir. 1999), withdrawn, 222 F.3d 1040 (5th Cir. 2000), which held that felony DWI was a

---

[4]  We also note that both the public and the BIA share a particularly strong policy interest in the finality of immigration proceedings. See I.N.S v. Abudu, 485 U.S. 94, 107 (1988) ("There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases."). Our review of the record in the instant matter reveals no procedural defects at any stage of the proceedings that would compel disturbing the finality of Galvan's prior deportation order in light of the countervailing policy interests at stake.

"crime of violence" for purposes of deportation.  Without question, the decision in <u>Chapa-Garza</u> prospectively binds the decisions of IJs and the BIA in future deportation hearings and those currently pending appeal.  <u>See</u> <u>Hernandez-Rodriquez</u>, 118 F.3d at 1042.  The subsequent change in the law under <u>Chapa-Garza</u> does not, however, cure Galvan's knowing misrepresentation to the immigration officials to procure reentry by using his invalidated resident alien card.  <u>Cf.</u> <u>Witter v. I.N.S.</u>, 113 F.3d 549, 553 (5th Cir. 1997) (refusing to give "retroactive effect to an annulment procured after entry to the United States to sanction a willful misrepresentation made at the time of application for the visa").

Galvan's first removal order became final on October 15, 1999, when the BIA dismissed his appeal and found him removable as an aggravated felon.  The final removal order was executed on or about October 22, 1999, when Galvan was removed to Mexico. Once removed from the country, Galvan's case was effectively finished.  <u>See</u> <u>Stone v. I.N.S.</u>, 514 U.S. 386, 398 (1995) ("Deportation orders are self-executing orders, not dependent upon judicial enforcement."); <u>Navarro-Miranda v. Ashcroft</u>, 330 F.3d 672, 675 (5th Cir. 2003) (holding that removal proceedings are "completed and final" after a person is actually deported pursuant to a removal order).  In this case, the record amply demonstrates that the IJ and BIA fairly applied the law as it was

constituted at the time of Galvan's removal proceedings.  See
Alvarenga-Villalobos v. Ashcroft, 271 F.3d 1169, 1173 (9th Cir.
2001) (declining to retroactively invalidate a prior order of
deportation based on a new rule announced in a subsequent case).

Finally, we find Galvan's attempt to distinguish Navarro-
Miranda based upon its different procedural posture to be
unpersuasive.  The two cases share a nearly identical factual
predicate, each concerning retroactive relief from a previously
valid removal order based on the intervening change in the law
under Chapa-Garza.  In denying the petitioner's effort to revisit
his already executed deportation order, the court in Navarro-
Miranda reasoned that "at the time Navarro's final order of
removal was issued, his DWI conviction was considered to be an
aggravated felony."  Navarro-Miranda, 330 F.3d at 674-75.
Moreover, the court found its decision to be consistent with the
"well-established principle that 'a final civil judgment entered
under a given rule of law may withstand subsequent judicial
change in that rule.'" Id. at 676 (citing Teague v. Lane, 489
U.S. 288, 308 (1989)). Although Galvan is technically correct
that Navarro-Miranda focused on the BIA's denial of a motion to
reopen, while the instant matter involves a collateral attack on
the removal order, the distinction is one without substance.  The
principles of finality articulated in Navarro-Miranda apply with
equal force in Galvan's case.  Thus, the court's holding in

<u>Navarro-Miranda</u> controls our disposition of this case.

### III.  CONCLUSION

For the foregoing reasons, we find no merit in petitioner Galvan's collateral challenge to his prior deportation order and we DISMISS his petition for review.