CARL E. STEWART, Circuit Judge:
Wilmer Alberto Garcia-Carias was removed from the United States in 2005. In December 2010, Garcia filed a motion to reopen with the Immigration Court. The following month, the Immigration Judge denied Garcia’s motion, finding that, under the Attorney General’s departure regulation, he lacked “jurisdiction to grant [Garcia’s motion] as [Garcia] ha[d] been removed from the United States.” On appeal, the Board of Immigration Appeals affirmed the Immigration Judge’s decision and, in doing so, agreed with his analysis. Garcia subsequently filed a petition for review with this court. For the following reasons, we grant his petition.
I.
A.
Wilmer Alberto Garcia-Carias was born in Honduras and was admitted to the United States as a lawful permanent resident on May 28, 1993. After being admitted to the United States, Garcia and his family resided in Louisiana. In November 2002, Garcia was stopped for a traffic violation, arrested, and subsequently charged with possession of ecstasy. During April of the following year, Garcia pleaded guilty to violating La.Rev.Stat. Ann. § 40:966(C), which provides that it is unlawful for a person to “knowingly and intentionally possess a controlled dangerous substance[J” Garcia was sentenced to “imprisonment at hard labor for a term of two years,” but received a suspended sentence, was placed on probation for two years, and was ordered to pay fees and costs. Under Louisiana law, Garcia’s offense is considered a felony because he was sentenced to a term of imprisonment of two years at hard labor. See La.Code.Crim. Proc. art. 933(3) (“ ‘Felony[1] means an offense that may be punished by death or by imprisonment at hard labor.”).
On July 25, 2005, Garcia received a pardon for this conviction under Louisiana’s first offender pardon statute.
B.
Three months before receiving his pardon, Garcia was served with a Notice to Appear charging him with being removable for having been convicted of possession of a controlled substance and an aggravated felony. During a May 31, 2005 hearing, Garcia admitted the allegations in the NTA. The Immigration Judge sustained the charges of removability and issued an order of removal against Garcia.
Garcia appealed the Immigration Judge’s decision to the Board a month after the hearing. Two weeks after filing his appeal, Garcia submitted a motion to withdraw his appeal. On July 27, 2005, the Board acknowledged Garcia’s withdrawal of his appeal and returned his case to the Immigration Judge without further action. Garcia was removed from the United States in November 2005, and currently resides in Honduras.
*260 C.
About a year after Garcia was removed, the Supreme Court decided Lopez v. Gonzales, 549 U.S. 47, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006). In Lopez, the petitioner, a legal permanent resident, was convicted in state court of aiding and abetting another person’s possession of cocaine. 549 U.S. at 51, 127 S.Ct. 625. After his release, removal proceedings were initiated against Lopez on grounds similar to those in Garcia’s case: a conviction involving a controlled substance that was also considered an aggravated felony. Id. Lopez’s challenge to the conclusion that his state conviction was an aggravated felony for immigration purposes was rejected by the Board and the Eighth Circuit. Id. at 52, 127 S.Ct. 625.
In reversing, the Supreme Court recognized that the Immigration and Nationality Act made Lopez “guilty of an aggravated felony if he has been convicted of ‘illicit trafficking in a controlled substance ... including,’ but not limited to, ‘a drug trafficking erime[.]’ ” Id. at 52-53, 127 S.Ct. 625. Importantly, the Court stated that a “drug trafficking crime” is defined by statute as any felony punishable under the federal Controlled Substances Act. Id. at 58, 127 S.Ct. 625. In making these observations, the Court also noted that mere possession is not a felony under the Controlled Substances Act. Id. It then proceeded to hold that “a state offense constitutes a ‘felony punishable under the Controlled Substances Act’ only if it proscribes conduct punishable as a felony under that federal law.” Id. at 60, 127 S.Ct. 625. Based on this holding, the Court reversed the Eighth Circuit’s judgment. Id.
Close to four years after Lopez was decided, one of Garcia’s relatives visited him from the United States. This relative encouraged Garcia to research his immigration case with the hope that Garcia would discover a way to legally return to the United States. Garcia followed this advice and came across an article about Lopez on the internet in October 2010. While he did not understand the article in its entirety, he did draw parallels between his case and the facts in Lopez. He then obtained pro bono counsel to help him with his case.
D.
On December 27, 2010, Garcia filed a motion to reopen his proceedings with the Immigration Judge. In his motion, Garcia argued that, in light of Lopez, his criminal conviction could not be considered an aggravated felony. Because his conviction could not be considered an aggravated felony, Garcia maintained that he had established his eligibility for cancellation of removal. Additionally, Garcia contended that, despite the several years that had passed since he was removed, his motion was timely because he filed it “less than ninety days and within a reasonable time of when he first became aware of the possibility of seeking to reopen his immigration proceedings pursuant to [Lopez].” In the alternative, he asserted that even if the motion was time barred under the applicable statute, equitable tolling rendered the motion timely. Finally, Garcia asked the Immigration Judge to reopen his case sua sponte.
The Immigration Judge denied Garcia’s motion on January 11, 2011. As the basis for the denial, the Immigration Judge stated that he lacked “jurisdiction [to] grant it as [Garcia] ha[d] been removed from the United States.” The Immigration Judge relied on the Attorney General’s departure regulation, 8 C.F.R. § 1003.23(b)(1), in arriving at his conclusion. Garcia appealed the denial of his motion to the Board.
*261 The Board dismissed Garcia’s appeal in July 2011. In its written decision, the Board agreed with the Immigration Judge’s application of the departure regulation:
The Immigration Judge correctly determined that he lacked jurisdiction to consider the respondent’s motion because the respondent was removed from the United States prior to the filing of the motion to reopen with the Immigration Judge. The regulations provide that a motion to reopen or reconsider “shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States.” 8 C.F.R. § 1003.23(b).
The Board further stated that Garcia’s arguments were foreclosed by Ovalles v. Holder, 577 F.3d 288 (5th Cir.2009) and Matter of Armendarez, 24 I. & N. Dec. 646 (BIA 2008). Garcia now appeals the Board’s decision.
II.
On appeal, Garcia has raised multiple arguments challenging the Board’s decision. One of the contentions raised by Garcia asks us to grant his petition on the ground that the departure regulation is invalid under Chevron. Because it is dis-positive, we will focus our attention on this argument.[1] Before delving into our Chevron analysis, we will provide some background regarding the departure regulation.
A.
Since the Board was established in 1940, it has possessed the regulatory power to entertain motions, including motions to reopen, subject to the limitations prescribed by the Attorney General. In 1952, the Attorney General limited that power by promulgating the “departure bar,” a regulation barring the Board from reviewing a motion to reopen filed by a person who has left the United States. 17 Fed.Reg. 11,469, 11,475 (Dec. 19, 1952) (codified at 8 C.F.R. § 6.2 (1953)). The substance of the departure regulation remains substantially the same today. See 8 C.F.R. §§ 1003.2(d), 1003.23(b)(1).[2]
In 1961, Congress created a statutory counterpart to the Board’s departure regulation. This statute prohibited federal courts from reviewing deportation and exclusion orders if the alien “has departed from the United States after the issuance of the order.” Act of Dept. 26, 1961, Pub.L. No. 87-301, § 5(a), 75 Stat. 650, 651-53 (1961). This bar to judicial review was repealed in 1996 with the passage of the Illegal Immigration Reform and Immigration Responsibility Act, Pub.L. No. 104-208, 110 Stat. 3009. Along with repealing this bar, the Act also established a statutory right to file a motion to reopen. In doing so, it “transform[ed] the motion *262 to reopen from a regulatory procedure to a statutory form of relief available to the alien.” Dada v. Mukasey, 554 U.S. 1, 15, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008).
The Act provided that an alien has a general right to file one motion to reopen proceedings. 8 U.S.C. § 1229a(c)(7)(A); Dado, 554 U.S. at 15, 128 S.Ct. 2307. It also detailed the required evidentiary content of a motion to reopen, the deadline for filing the motion, and exceptions to both the numerical limit of one motion and the time period for filing the motion. 8 U.S.C. § 1229a(c)(7)(A)-(C). Notably, despite codifying various limitations on an alien’s right to file a motion to reopen, Congress did not codify the departure regulation.
In implementing the Act, the Attorney General promulgated several additional regulations. Inspection and Expedited Removal of Aliens: Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed.Reg. 10312 (Mar. 6, 1997). As relevant here, the Attorney General, after a notice and comment period, concluded that nothing in the Act “supported] reversing the long established rule that a motion to reopen cannot be made in immigration proceedings by or on behalf of a person after that person’s departure from the United States.” Id. at 13021.
In 2000, Congress made additional revisions to the statute governing motions to reopen. See Violence Against Women Act of 2000, Pub.L. No. 106-386, div. B, § 1506, 114 Stat. 1464, 1528 (codified at 8 U.S.C. § 1229a(c)(6)(C)(iv)). In these revisions, Congress exempted some alien victims of domestic violence from the deadlines on motions to reopen. Five years later, Congress limited this exemption by requiring that the alien victim be “physically present in the United States at the time of filing the motion.” See Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub.L. No. 109-162, § 825(a)(2)(F), 119 Stat. 2960, 3063-64 (Jan. 5, 2006) (codified at 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV)).
The Board subsequently addressed the validity of the departure regulation in light of the statutory changes that had taken place since 1996. While it recognized circuit case law questioning the continued validity of the departure regulation, the Board ultimately concluded that the “departure bar rule remainfed] in full effect.” Matter of Armendarez, 24 I. & N. Dec. at 660.
As it relates to motions filed before the Immigration Judge, the departure regulation presently reads as follows:
A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.
8 C.F.R. § 1003.23(b)(1). A substantially similar regulation limits an alien’s ability to file a motion to reopen before the Board. See 8 C.F.R. § 1003.2(d). Together, these separate regulations constitute what has been referred to as the “departure bar” or “departure regulation.”
With this background in mind, we now turn to considering the validity of the departure regulation under Chevron.
B.
We review the Board’s findings of fact for substantial evidence and its legal determinations de novo. Khalid v. *263 Holder, 655 F.3d 363, 366 (5th Cir.2011) (citation omitted). As to its interpretation of immigration statutes, we defer to the Board to the extent prescribed by the two-step analysis set forth in Chevron. Id. (citation omitted).
Under Chevron’s first step, we must determine whether the statute at issue is ambiguous. “ ‘If the intent of Congress is clear,’ — that is, the statute is unambiguous with respect to the question presented — ‘the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.’ ” Id. (citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). To determine whether a statute is ambiguous, we must employ the traditional tools of statutory interpretation. Id. (citation omitted). “Chief among these, of course, is the ‘plain language of the statute.’ ” Id. (quoting In re Dale, 582 F.3d 568, 573 (5th Cir.2009)).
 “At the same time, the Supreme Court has cautioned that the statute must be read as a whole: ‘In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation.’ ” Id. at 366-67 (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)). “Thus, a statutory provision cannot be read in isolation, but necessarily derives meaning from the context provided by the surrounding provisions, as well as the broader context of the statute as a whole.” Id. at 367.
If a provision is ambiguous as to the question presented, the analysis proceeds to Chevron’s second step, which asks “whether the agency’s answer is based on a permissible construction of the statute.” Id. (citation omitted). In considering this second step, we may evaluate “‘only whether the decision is arbitrary, capricious, or manifestly contrary' to the statute, and may not substitute our own judgment ‘for a reasonable alternative formulated by the [Board].”’ Id. (quoting Mortera-Cruz v. Gonzales, 409 F.3d 246, 253 (5th Cir.2005)).
C.
Going no further than Chevron’s first step, we conclude that Section 1229a(c)(7) unambiguously gives aliens a right to file a motion to reopen regardless of whether they have left the United States. Three reasons support this conclusion.
First, the statutory text conferring a right to file a motion to reopen plainly does not place any geographic restrictions on its exercise. By statute, an alien has a general right to file one motion to reopen proceedings. 8 U.S.C. § 1229a(c)(7); Dada, 554 U.S. at 15, 128 S.Ct. 2307 (stating that Section 1229a(c)(7) “is plain insofar as it guarantees to each alien the right to file one motion to reopen proceedings under this section”). The statute specifically states the following: “An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in sub-paragraph (C)(iv).” 8 U.S.C. § 1229a(c)(7)(A). By its clear terms, the statute does not distinguish between those aliens who are abroad and those who remain in the United States — the unmodified “alien” captures both. Congress could have, but did not, distinguish between the two classes of aliens in creating this right. Under our reading, the statute is facially unambiguous. Because the statute is facially unambiguous, we will adhere to its plain meaning. See Cheshire v. Comm’r, 282 F.3d 326, 336-37 (5th Cir.2002) (“Un *264 less the text of a statute is ambiguous on its face, this court adheres to that statute’s plain meaning.”). Giving the statute its plain meaning, we conclude that an alien’s ability to exercise his statutory right to file a motion to reopen is not contingent upon his presence in the United States.
Second, the statutory limitations placed on the exercise of the right to file a motion to reopen provide contextual support to Section 1229a(c)(7)(A)’s plain meaning. As stated earlier, the statute limits the use of this motion by imposing evidentiary requirements and time limitations. See 8 U.S.C. 1229a(c)(7)(B)-(C). The fact that Congress created limitations on the exercise of the motion to reopen, yet did not place a geographic restriction, supports a reading of Section 1229a(c)(7)(A) that does not deny departed aliens their right to file a motion to reopen. Cf. United States v. Johnson, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (“When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference ... is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.”).
Third, Congress’s requirement that domestic abuse victims physically remain in the United States in order to file out-of-time motions to reopen also buttresses our interpretation of the statute. The existence of a physical presence requirement in close proximity to the textual language at issue supports the conclusion that Congress did not condition the right to file a motion to reopen on an alien’s presence in the United States. Indeed, as the Supreme Court has recognized, “[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (internal quotation marks and citation omitted). Moreover, an interpretation of the statute that would impose a general physical presence requirement would effectively read the aforementioned provision regarding domestic abuse victims out of the statute. Such a reading would run afoul of basic principles of statutory interpretation. See TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (stating that it is a “cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant”).
In sum, we hold that the Board’s application of the departure regulation to statutory motions to reopen is invalid under Chevron’s first step as the statute plainly does not impose a general physical presence requirement. This conclusion is consistent with the decisions of our sister circuits that have addressed this specific issue.[3] See Lin v. U.S. Att’y Gen., 681 F.3d 1236, 1241 (11th Cir.2012) (holding that “the plain language of the statute, the statutory structure, and the amendment scheme all point to one conclusion: IIRIRA guarantees an alien the right to file one motion to reopen, and the departure bar impermissibly undercuts that right”); *265 Contreras-Bocanegra v. Holder, 678 F.3d 811, 818 (10th Cir.2012) (en banc) (concluding that “[b]ecause the post-departure bar regulation conflicts with Congress’ clear intent, it cannot survive step one of the Chevron analysis”); Coyt v. Holder, 593 F.3d 902 (9th Cir.2010) (deciding the case on Chevron's first step and concluding that the departure bar cannot be applied to petitioners who have been involuntarily removed from the United States); William v. Gonzales, 499 F.3d 329, 333 (4th Cir. 2007) (holding that Section 1229a(e)(7)(A) “clearly and unambiguously grants an alien the right to file one motion to reopen, regardless of whether he is present in the United States when the motion is filed”); cf. Prestol Espinal v. Att’y Gen., 653 F.3d 213 (3d Cir.2011) (in the context of statutorily authorized motions for reconsideration, holding that the “post-departure bar regulation conflicts with Congress’ clear intent for several reasons”). The uniform alignment of other circuits that have addressed this issue counsels in favor of deeming the departure regulation invalid as applied to statutory motions to reopen. See In re Dale, 582 F.3d at 575 n. 8 (bolstering its conclusion with the “general prudential concern[ ] with creating unnecessary circuit splits”).
One final point warrants mention. In his brief, the Attorney General contends that the departure regulation’s validity is supported by our decisions in Navarro-Miranda v. Ashcroft, 330 F.3d 672 (5th Cir.2003) and Ovalles. According to him, these two decisions foreclose a challenge to the application of the departure regulation to statutory motions to reopen. We disagree. Navarro-Miranda dealt with the applicability of the departure regulation in the context of the Board’s exercise of its regulatory power to reopen cases sua sponte. See 330 F.3d at 675-76. Unlike the present case, Navarro-Miranda did not involve an alien’s statutory right to file a motion to reopen.
Ovalles is also not controlling. There, we denied relief on two relevant grounds. First, we concluded that Ovalles could not avail himself of his statutory right to file a motion to reopen or for reconsideration because his motion before the Board was untimely. Ovalles, 577 F.3d at 296 (“Thus, because sections 1229a(c)(6) and 1229a(c)(7) of IIRIRA do not grant Ovalles the right to have his facially and concededly untimely motion heard by the BIA, he cannot rely on those statutory provisions as a basis for contending that the BIA was required to give sua sponte consideration to the merits of his July 27, 2007 motion to reconsider or reopen its March 2004 decision.”). Second, relying on Navarro-Miranda, we concluded that the Board acted reasonably in determining that the departure regulation deprived it of its regulatory power to reopen or reconsider decisions sua sponte. Id. at 296-97.
In short, Navarro-Miranda and Ovalles resolved the issue of the applicability of the departure regulation to the Board’s regulatory power to reopen or reconsider sua sponte. Contrary to what the Attorney General suggests, however, these decisions did not speak directly to the relationship between the departure regulation and an alien’s statutory right to file a motion to reopen. Given the fundamental difference between the regulatory sua sponte power and the aforementioned statutory right, we conclude that Navarro-Miranda and Ovalles do not govern our consideration of whether the departure regulation can limit Garcia’s right to file a statutory motion to reopen.
Put simply, Garcia’s statutory right to file a motion to reopen is not trumped by the Board’s departure regulation. In so holding, we join four other circuits that have arrived at this same conclusion. Giv *266 en our narrow procedural ruling, nothing in this opinion should be read as commenting on any substantive claim Garcia may present on remand.
III.
For these reasons, we GRANT Garcia’s petition and REMAND to the Board for proceedings consistent with this opinion.

. Garcia also asks us to conclude that his motion was timely. We refuse this request. The Board did not affirm the Immigration Judge's decision on timeliness grounds. Because the timeliness of Garcia’s motion was not addressed by the Board, we will refrain from reaching this issue. See SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.”); cf. I.N.S. v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (holding that a court of appeals is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry).

. From early on, the Board construed the departure regulation as a limitation on its "jurisdiction.” Matter of G-Y-B-, 6 I. & N. Dec. 159, 159-60 (BIA 1954).

. The Sixth and Seventh Circuits have also granted petitions for review challenging the departure regulation, but on different grounds. Specifically, both circuits concluded that the Board's jurisdictional interpretation of the regulation was improper in light of the Supreme Court’s recent efforts to clarify the distinction between jurisdictional and other legal rules. See Pruidze v. Holder, 632 F.3d 234 (6th Cir.2011); Marin-Rodriguez v. Holder, 612 F.3d 591 (7th Cir.2010).