United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 12, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-60041

JUPITER ENERGY CORPORATION,

Petitioner,

versus

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

Petition for Review of an Order of the
Federal Energy Regulatory Commission

Before REAVLEY, HIGGINBOTHAM, and DEMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Jupiter Energy Corporation petitions this Court for review of the Federal Energy Regulatory Commission's determination that Jupiter's two pipelines perform a "transportation" function rather than a "gathering" function, thereby subjecting them to the Commission's jurisdiction under Section 1(b) of the Natural Gas Act.[1] We grant the petition, vacate the Commission's decision, and remand.

I

Jupiter owns and operates two natural gas pipelines in the Gulf of Mexico. Both pipelines originate at "Platform 39A," which

---

[1] 15 U.S.C. § 717(b).

is owned by Jupiter's parent corporation, Union Oil Company of California.  The Jupiter system is located roughly 10 miles offshore from Louisiana in about 40 feet of water.  The first Jupiter pipeline (the "8-inch line") is roughly eight inches in diameter and is 3.2 miles long.  It heads from Platform 39A and, before reaching the shoreline, feeds into a pipeline owned by Transcontinental Gas Pipe Line Corporation ("Transco").  The Transco line is a lateral line ranging from 12 to 24 inches in diameter and running parallel to the shore at the point of connection with the 8-inch line.  The second Jupiter pipeline (the "10-inch line") is roughly ten inches in diameter and is 10.2 miles long.  It runs from Platform 39A (via an abandoned platform) to a land-based pipeline on the shore owned by Tennessee Gas Transmission Company. Platform 39A is itself downstream from other pipelines.  Gas arrives at Platform 39A from 16 wells via non-jurisdictional Unocal facilities: ten platforms and several pipelines ranging from four to eight inches in diameter.

In 1966, the Commission's predecessor, the Federal Power Commission ("FPC"), determined that Jupiter provided gas "transportation" services.  That classification was carried on by the Commission, thereby subjecting Jupiter to the Commission's jurisdiction.  On November 4, 2002, Jupiter requested that the Commission change the status of its pipelines from jurisdictional to non-jurisdictional--that is, that the Commission determine that Jupiter is engaged in "gathering" rather than "transportation" of

2

natural gas.  The Commission unanimously denied this request, and denied rehearing by a 2-1 vote.  Jupiter now seeks our review.

II

Section 1(b) of the Natural Gas Act governs "the transportation of natural gas in interstate commerce."[2]  In Section 1(b), Congress "not only prescribed the intended reach of the Commission's power, but also specified the areas into which this power was not to extend."[3]  This Section expressly exempts from the Commission's jurisdiction the "production" or "gathering" of natural gas.[4]  However, "[e]xceptions to the primary grant of jurisdiction in [Section 1(b)] are to be strictly construed,"[5] and the terms "production" and "gathering" are to be "narrowly confined to the physical acts of drawing the gas from the earth and preparing it for the first stages of distribution."[6]

The Commission employs a multi-factor "primary function" test developed in the *Farmland Industries* case.[7]  Under this test, "the Commission determines whether, with reference to the specific facts and circumstances of the particular facility in question, its

---

[2] 15 U.S.C. § 717(b).

[3] *FPC v. Panhandle E. Pipe Line Co.*, 337 U.S. 498, 503 (1949); *see N.W. Cent. Pipeline Corp. v. State Corp. Comm'n*, 489 U.S. 493, 510 (1989).

[4] 15 U.S.C. § 717(b).

[5] *Interstate Nat'l Gas Co. v. FPC*, 331 U.S. 682, 690-91 (1947).

[6] *N. Nat'l Gas Co. v. State Corp. Comm'n*, 372 U.S. 84, 90 (1963).

[7] *See Farmland Indus., Inc.*, 23 FERC ¶ 61,063 (1983).

primary function is gathering."[8]  The test, which has continued to evolve, currently employs both physical and non-physical factors. The physical factors include:

> (1) the facility's length and diameter, (2) the extension of the facility beyond the central point in the producing field, (3) the facility's geographic configuration, (4) the placement of compressors and processing plants, (5) the location of wells along all or part of the facility, and (6) operating pressures.[9]

The non-physical factors are "the purpose, location, and operation of the facility, the general business activity of the owner of the facility, and whether the jurisdictional determination is consistent with the objectives of the NGA and Natural Gas Policy Act."[10]  The Commission "do[es] not consider any single factor to be determinative and recognize[s] that all factors do not necessarily apply in all situations."[11]

In 1990, in *Amerada Hess Corporation*, the Commission modified the primary function test with respect to offshore facilities by applying "a sliding scale which will allow the use of gathering pipelines of increasing lengths and diameters in correlation to the distance from shore and the water depth of the offshore production

---

[8] *Sea Robin Pipeline Co.*, 127 F.3d 365, 368 (5th Cir. 1997) (citing *EP Operating Co. v. FERC*, 876 F.2d 46, 48 (5th Cir.1989)).

[9] *Transcon. Gas Pipe Line Corp.*, 97 FERC ¶ 61,296, at 62,380 (2001) (describing the *Farmland Industries* test).

[10] *Id.*

[11] *Id.*

area" based on the observation that as a result of "recent advances in engineering and available technology, offshore drilling operations continue to move further offshore and further from existing interstate pipeline interconnections."[12] Following our 1997 decision in *Sea Robin Pipeline Co. v. FERC*,[13] the Commission again modified the test with respect to offshore facilities by

> (1) adopting an additional analytical element applicable to systems that contain a centralized aggregation point; (2) adjusting the weight to be afforded the "behind-the-plant" criterion so that the location of processing plants is not necessarily determinative and can be outweighed by other factors; and (3) focusing primarily on physical factors.[14]

The primary function test, as thus modified, was subsequently upheld.[15]

## III

### A

Under the Administrative Procedure Act, an agency determination shall be set aside if it is "arbitrary, capricious,

---

[12] 52 FERC ¶ 61,268, at 61,988 (1990) (responding to *EP Operating Co.*).

[13] 127 F.3d 365 (5th Cir. 1997).

[14] *Transcon. Gas Pipe Line Corp.*, 97 FERC ¶ 61,296, at 62,380 (citing the *Sea Robin* litigation); *see Sea Robin Pipeline Co.*, 71 FERC ¶ 61,351 (1995), *reh'g denied*, 75 FERC ¶ 61,332 (1996), *vacated sub nom. Sea Robin Pipeline Co. v. FERC*, 127 F.3d 365 (5th Cir. 1997), *order on remand*, *Sea Robin Pipeline Co.*, 87 FERC ¶ 61,384 (1999), *reh'g denied*, 92 FERC ¶ 61,072 (2000).

[15] *See ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071 (D.C. Cir. 2002).

5

an abuse of discretion or otherwise not in accordance with law."[16] "The fundamental precept that permits this deferential standard of review is that 'an agency must cogently explain why it has exercised its discretion in a given manner' and 'must supply a reasoned analysis' for any departure from other agency decisions."[17] However, "a court is not to substitute its judgment for that of the agency" or "supply a reasoned basis for the agency's action that the agency itself has not given."[18]

B

Jupiter argues that the Commission's decision--that Jupiter's system is transportational--is arbitrary and capricious because one of its pipelines is upstream from a gathering pipeline.[19] We agree.

In a prior matter, the Commission determined that a portion of the Transco pipeline, into which Jupiter's 8-inch line flows, is a non-jurisdictional gathering pipeline.[20] That decision was upheld by the D.C. Circuit.[21] In the present case, the Commission decided

---

[16] 5 U.S.C. § 706(2)(A); *see Sea Robin Pipeline Co.*, 127 F.3d at 369; *EP Operating Co.*, 876 F.2d at 48.

[17] *Sea Robin Pipeline Co.*, 127 F.3d at 369 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 48, 57 (1983)).

[18] *State Farm*, 463 U.S. at 43 (internal quotation marks and citations omitted); *see Sea Robin Pipeline Co.,* 127 F.3d at 369.

[19] We may review this objection because it was "urged before the Commission in the application for rehearing." 15 U.S.C. § 717r(b).

[20] *See Transcon. Gas Pipe Line Corp.*, 96 FERC ¶ 61,245, *reh'g order*, 97 FERC ¶ 61,298 (2001).

[21] *See Williams Gas Processing--Gulf Coast Co. v. FERC*, 331 F.3d 1011 (D.C. Cir. 2003).

that Platform 39A represents the point at which gathering stops and transportation begins and, therefore, that Jupiter's two pipelines--including the one that flows into the Transco line--are jurisdictional transportation lines.  The result is the following anomalous scenario: A series of <u>gathering</u> pipelines (upstream from Platform 39A) feeds (via Platform 39A) into a <u>transportation</u> pipeline (Jupiter's 8-inch line), which in turn feeds into a <u>gathering</u> pipeline (the Transco line).  We are persuaded that this cannot be considered consistent.

In *Sea Robin Pipeline Co.*, we suggested that there is *one* point on any given route where gathering stops and transportation begins:

> Discomfort in drawing the jurisdictional line at points internal to an overall system may be soothed with the reminder that Congress did not intend to extend FERC's jurisdiction to all natural gas pipelines; indeed it demands the drawing of jurisdictional lines, even when *the end of gathering* is not easily located . . . .[22]

On remand in the *Sea Robin* case, the Commission acknowledged: "As noted by the Fifth Circuit, where gas is destined for interstate commerce, there is necessarily *a point* at which the collection or gathering of gas ends, and interstate transmission begins."[23]

---

[22] 127 F.3d at 371 (emphasis added).

[23] *Sea Robin Pipeline Co.*, 87 FERC at 62,427 (emphasis added); *see also Tarpon Transmission Co.*, 78 FERC ¶ 61,278, at 62,165 (1997) (noting that where the facilities at issue are "downstream of another pipeline's jurisdictional transmission facilities . . . a gathering finding is necessarily precluded"); *Trunkline Gas Co.*, 70 FERC ¶ 61,163, at 61,503 (1995) (upholding classification

The Commission already set the jurisdictional boundary downstream from one of Jupiter's pipelines. It is inconsistent and arbitrary for the Commission now to set a jurisdictional dividing point at Platform 39A. Given that the Commission's decision as to both of Jupiter's pipelines flowed--so to speak--from the conclusion that Platform 39A represents the point at which gathering ceases and transportation begins, the inconsistency generated in relation to the downstream non-jurisdictional line infects the whole of the Commission's decision. We decline to address Jupiter's additional arguments at this time.

IV

The Commission's decision is fatally flawed by the inconsistency of having the putative point where gathering ends and transportation begins upstream from a gathering pipeline. The

---

of facility as "gathering," and noting that, because "a facility functionalized as gathering may not be located downstream of facilities functionalized as transmission," upstream pipeline owner "should functionalize its upstream connecting pipeline segments as gathering for rate and accounting purposes in its next section 4 rate proceeding"); *accord Cavallo Pipeline Co.*, 71 FERC ¶ 61,053, at 61,198 (1995).

More recently, the Commission declined to hold that the presence of an upstream jurisdictional pipeline necessarily requires a finding that a given segment further downstream is jurisdictional. *See Sea Robin Pipeline Co.*, 92 FERC at 61,295 ("[T]he Commission does not agree that the fact of Sea Robin's upstream interconnection with [jurisdictional facilities], by itself, compels a finding that the east leg of Sea Robin's system is jurisdictional."). This decision was upheld by the D.C. Circuit. *See ExxonMobil Gas Mktg. Co.*, 297 F.3d at 1087 (upholding Commission's finding that pipeline is non-jurisdictional despite an upstream jurisdictional pipeline).

In contrast, we are asked today to review whether the Commission's *jurisdictional* finding is arbitrary in light of a *downstream non-jurisdictional* pipeline. As such, we offer no opinion on the situation faced in *ExxonMobil*. In any case, the D.C. Circuit, in upholding the Commission's decision, tellingly noted that "[i]f anything, . . . it is the [upstream] pipeline, rather than [the pipeline at issue], that has been erroneously classified." *Id*.

petition for review is GRANTED.  The decision of the Commission is VACATED and the case is REMANDED.