United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 15, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 05-61173

JUPITER ENERGY CORPORATION,

Petitioner,

versus

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

Before DAVIS and STEWART, Circuit Judges, and GODBEY, District Judge.[*]

CARL E. STEWART, Circuit Judge:

Jupiter Energy Corporation ("Jupiter") applied to the Federal Energy Regulatory Commission (the "Commission") for a determination that its two natural gas pipelines gather as opposed to transport natural gas. In May 2003, the Commission denied Jupiter's application, concluding that Jupiter engages in jurisdictional transportation. *See Jupiter Energy Corp.*, 103 F.E.R.C. ¶ 61,184 (2003), *reh'g denied*, 105 F.E.R.C. ¶ 61,243 (2003), *reh'g denied*, 106 F.E.R.C. ¶ 61,170 (2004) (the "2003 Jupiter Jurisdictional Order"). The Fifth Circuit granted review, vacated the

---

[*]District Judge for the Northern District of Texas, sitting by designation.

1

Commission's decision, and remanded the case. *See Jupiter Energy Corp. v. F.E.R.C.*, 407 F.3d 346 (5th Cir. 2005) [hereinafter *Jupiter I*]. On remand, the Commission reaffirmed its original determination and denied Jupiter's request for rehearing. *See Jupiter Energy Corp.*, 111 F.E.R.C. ¶ 61,497, *reh'g denied*, 113 F.E.R.C. ¶ 61,103 (2005). After careful review, we once again remand this case to the Commission for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The natural gas industry divides a company's operations into three functions: production, gathering, and transportation. The Natural Gas Act ("NGA"), 15 U.S.C. § 717(b), authorizes the Commission to regulate the transportation of natural gas in interstate commerce. The Jupiter system consists of two natural gas pipelines located approximately ten miles offshore from Louisiana in the Vermilion Block 39 ("Platform 39A"). The gas arriving at Platform 39A comes from sixteen wells located in Vermilion Blocks 23, 38, and 39. The gas travels from the wells to Platform 39A over Unocal-owned gathering facilities. The first Jupiter pipeline is 3.2 miles and 8-5/8 inches in diameter (the "8-inch line"). The second Jupiter pipeline is 10.2 miles and 10-3/4 inches in diameter (the "10-inch line"). Jupiter's 8-inch line moves gas from Platform 39A to a sub-sea line owned by Transcontinental Gas Pipe Line Corp. ("Transco"), and the 10-inch line moves gas from Platform 39A to a land-based pipeline owned by Tennessee Gas Transmission Company ("Tennessee").[1] Unocal compresses some of the gas to create sufficient pressure for transportation through the Jupiter system to the downstream interstate pipelines. Otherwise, the gas moved on the Jupiter system

---

[1]Prior to 2000, the 10-inch line connected to the Tennessee pipeline, and then the gas traveled twenty-two miles to a separation and dehydration facility owned by Jupiter. At this facility, Jupiter separated the gas condensate from the water and metered the gas prior to its continuing on the Tennessee system.

remains unprocessed.  In 1997, Jupiter became a wholly-owned subsidiary of Unocal, and Unocal produces a large portion of the gas moved through the Jupiter system.[2]  Unocal's production and gathering operations in the Gulf of Mexico are exempt from the Commission's jurisdiction.

In 1966, the Federal Power Commission (a federal administrative predecessor of F.E.R.C.) determined that Jupiter provided a transportation function.  *The Jupiter Corp.*, 35 F.P.C. 1091 (1966).  On November 4, 2002, Jupiter requested that the Commission relinquish jurisdiction because its facilities primarily perform a gathering function.  On May 16, 2003, the Commission issued an order stating that Jupiter's pipelines are transmission facilities subject to the Commission's jurisdiction.  *See* 103 F.E.R.C. ¶ 61,184.  The Commission reasoned that Platform 39A constitutes a point of delineation where gathering ends and jurisdictional transmission begins; therefore, Jupiter's facilities located downstream of Platform 39A serve a transmission function.  103 F.E.R.C. ¶ 61,184 at 61,713.  On November 20, 2003, the Commission reaffirmed its previous order and denied Jupiter's request for rehearing.  105 F.E.R.C. ¶ 61,243 at 62,285.

In *Jupiter I*, the Fifth Circuit vacated the 2003 Jupiter Jurisdictional Order and remanded the case.  407 F.3d at 351.  This court reasoned that Jupiter's facilities were located upstream from a gathering pipeline, the Transco line; therefore, the Commission could not classify the facilities as performing a transmission function.  *Id.*  Meanwhile, the Commission issued an order asserting jurisdiction over the Transco line, concluding that Transco's system also serves a transmission function.  *See Transcon. Gas Pipe Line Co.*, 111 F.E.R.C. ¶ 61,090, *reh'g denied*, 111 F.E.R.C.

---

[2]Since 1992, Jupiter facilities only ship gas for its parent company, Unocal. In previous years, Jupiter transported gas for Kerr-McGee, Phillips Petroleum Company, and Unocal.

61,498 (2005) (the "2005 Transco Jurisdictional Order").[3] Based on its 2005 Transco Jurisdictional Order, the Commission reaffirmed its jurisdiction over Jupiter's lines, reasoning that the Fifth Circuit's contentions were no longer applicable. 111 F.E.R.C. ¶ 61,497 at 63,112 . On the same date, the Commission denied a request for rehearing of its 2005 Transco Jurisdictional Order. *Transcon. Gas Pipe Line Corp.*, 111 F.E.R.C. ¶ 61,498 (2005). On October 28, 2005, the Commission also denied Jupiter's request for rehearing. 113 F.E.R.C. ¶ 61,103 (2005). Jupiter filed a timely appeal.[4] The central issue before this court is whether the Commission erred in finding that Jupiter's pipelines transport natural gas, thus requiring termination of the Commission's regulatory jurisdiction under § 1(b) of the NGA, 15 U.S.C. § 717(b).

---

[3]In 2001, the Commission determined that the Transco line served a gathering function. *Transcon.Gas Pipe Line Corp*., 96 F.E.R.C. ¶ 61,246 at 61,976 (2001), *reh'g denied in relevant part*, 97 F.E.R.C. ¶ 61,298 (2001) (the "2001 Transco Jurisdictional Order"). The Commission then held a separate proceeding determining that Jupiter's lines performed a transmission function. Prior to the Fifth Circuit's opinion in *Jupiter I*, the Commission issued an order for Williams Gas Processing-Gulf Coast Company ("WGP") and Transco to show cause why the 2001 Transco Jurisdictional Order should not be reversed in light of the 2003 Jupiter Jurisdictional Order. *Transcon. Gas Pipe Line Corp*., 107 F.E.R.C. ¶ 61,122 at 61,411 (2004). The Fifth Circuit entered its judgment in *Jupiter I*, however, prior to the Commission's addressing the show cause order.

[4]WGP and Transco petitioned the D.C. Circuit for review of the 2005 Transco Jurisdictional Order. The D.C. Circuit acknowledged the pendency of *Jupiter II* in this court and commented that "the challenges to the Commission's 2005 Transco Jurisdictional Order and 2005 Transco Rehearing Order are at the heart of the petition for review in this case." *Williams Gas Processing-Gulf Coast Co., L.P. v. F.E.R.C.*, 475 F.3d 319, 2006 WL 3716638 at *2 (D.C. Cir. 2006). The court vacated the Commission's 2005 Transco Jurisdictional Order for further proceedings and concluded that any "decision on the merits must await reasoned decisionmaking from the Commission." *Id.* at *11. The D.C. Circuit's vacatur effectively recreated the same anomalous scenario that existed in *Jupiter I* wherein a transportation line sits upstream of a pipeline classified as a gathering line.

## II.  STANDARD OF REVIEW

This court reviews an administrative order under the arbitrary and capricious standard.  5 U.S.C. § 706(2)(A); *Acadian Gas Pipeline Sys. v. F.E.R.C.*, 878 F.2d 865, 868 (5th Cir. 1989).  The court will uphold the Commission's application of the multi-factor primary function test so long as it gives "reasoned consideration to each of the pertinent factors and articulates factual conclusions that are supported by substantial evidence in the record." *ExxonMobil Gas Mktg. Co. v. F.E.R.C.*, 297 F.3d 1071, 1084 (D.C. Cir. 2002) (citing *Lomack Petroleum, Inc. v. F.E.R.C.*, 206 F.3d 1193, 1197 (D.C. Cir. 2000)).

## III.  DISCUSSION

To determine the primary function of a natural gas facility, the Commission applies a multi-factor test, which includes the following factors: (1) length and diameter of the pipeline; (2) proximity to the central point in a field; (3) geographic configuration of the facility; (4) proximity to processing plants and compressors; (5) location of wells along all or part of the facilities; and (6) operating pressure. *Farmland Indus., Inc.*, 59 F.E.R.C. ¶ 61,063 (1983).  The Commission applies this multi-factor test to the unique facts and circumstances of each case without any one factor deemed as outcome determinative.  *EP Operating Co. v. F.E.R.C.*, 876 F.2d 46, 48 (5th Cir. 1989).  For offshore facilities, the Commission also evaluates "non-physical" criteria: (1) the purpose, location, and operation of a facility; (2) the business of the owner; (3) whether the jurisdictional determination is consistent with the objectives of the NGA and other legislation; and (4) the changing technical and geographic nature of exploration and production.  *Amerada Hess Corp.*, 52 F.E.R.C. ¶ 61,268 at 61,987-88 (1990).  Following *Sea Robin Pipeline Co.*, 92 F.E.R.C. ¶ 61,072 (2000), the Commission modified the primary function test as follows: (1) it adopted an additional analytical element

applicable to systems that contain a centralized aggregation point; (2) it adjusted the weight to be afforded the "behind-the-plant" criterion so that the location of processing plants is not necessarily determinative and can be outweighed by other factors; and (3) when weighing the totality of the circumstances, the Commission places greater focus on the physical factors rather than the non-physical factors. *Jupiter I*, 407 F.3d at 349.

To successfully contest a jurisdictional determination, the petitioner must show that the "Commission's choices are unreasoned and its chosen line of demarcation is not within a zone of reasonableness as distinct from the question of whether the line drawn by the Commission is precisely right." *ExxonMobil*, 297 F.3d at 1084 (quoting *Hercules, Inc. v. E.P.A.*, 598 F.2d 91, 107 (D.C. Cir. 1978)) (internal quotations omitted). Jupiter argues that under circuit precedent, the Commission's order should be set aside because it attributed undue weight to the central point factor. The Commission contends that Jupiter cannot meet its burden of proving the Commission's jurisdictional line was a patently unreasonable determination. Moreover, the Commission reasonably reaffirmed its functional analysis after resolving the incongruity in the status of Jupiter's upstream facilities and Transco's downstream facilities.

The Commission's jurisdictional determination hinged on the finding that Platform 39A serves as the central point of aggregation for the Jupiter system.[5] 103 F.E.R.C. ¶ 61,184 at 61,713. According to the Commission, the physical attributes of the gas and geographic configuration of the system undergo a "marked change" at Platform 39A; therefore, Jupiter's lines are jurisdictional transmission facilities. *Id.* In its order on rehearing, the Commission maintained that "the factor

[5]The central line of aggregation is a point where small lines carrying gas from various wells converge and deliver their collective volumes in a single large line for transportation to shore. *Transcon. Gas Pipe Line Corp.*, 95 F.E.R.C. ¶ 61,396 at 62,479.

bearing the greatest weight is the location of Jupiter's pipeline facilities downstream of Unocal's Platform 39A, which is both the last point at which gas is collected and the point at which gas is compressed to transmission pressures before entering Jupiter's two pipelines which transport the gas to shore." 105 F.E.R.C. ¶ 61, 243 at 62,286.

In *Sea Robin*, the Fifth Circuit vacated and remanded a jurisdictional determination because although the Commission "purported to work through all the factors in the primary function test. . . . Yet it excluded at least four factors on grounds that [the factors] did not shed light on the problem . . . ." *Sea Robin v. F.E.R.C.*, 127 F.3d 365, 370 (5th Cir. 1997). The court further stated that

> [t]he Commission must apply consistently its primary function test and not discount, without reasoned analysis, application of any factor which points to a non-jurisdictional result. It may not "disregard those facts or issues that prove difficult or inconvenient" or "refus[e] to come to grips" with certain results in applying the primary function test.

*Id.* (citing *Tenneco Gas v. F.E.R.C.*, 969 F.2d 1187, 1214 (D.C. Cir. 1992)). Contrary to *Sea Robin*'s instruction, the Commission's initial review of Jupiter's jurisdictional status summarily dismissed the factors of length, diameter, and operating pressure, which all indicate a gathering function. The order reads that, "[w]e recognize that the length, diameter and operating pressures of Jupiter's pipeline facilities may not necessarily be inconsistent with a gathering function. However, it appears that gas aggregation is complete once the gas reaches Unocal's Platform 39A." 103 F.E.R.C. ¶ 61,184 at 61,713. The dissent argued that the Commission "failed to give adequate weight to factors other than the central point of aggregation." 105 F.E.R.C. ¶ 61,243 at 62,287. On rehearing, the Commission included additional conclusory statements with no reasoned analysis for why it negated the import of factors favoring a determination that Jupiter's lines serve a gathering

7

function. For example, in *Pacific Offshore Pipeline Co.*, the Commission determined that "the absence of wells located along POPCO's line is not uncharacteristic for *offshore gathering facilities*." 64 F.E.R.C. ¶ 61,167 at 62,509 (1993) (emphasis added). The 2003 Jupiter Rehearing Order states that "[t]he Commission also gave weight to the fact that there are no wells or gathering lines connecting to any of the subject pipeline facilities." 105 F.E.R.C. ¶ 61,243 at 62,286. Yet, the Commission provides no further analysis for how the absence of wells or gathering lines affected its determination.

Jupiter's system consists of two short, small-diameter lines. Jupiter compresses the gas, using Unocal's equipment, to a pressure sufficient for moving the gas downstream toward processing plants. These physical factors, given short shrift in the Commission's determination, support a jurisdictional determination opposite that of the Commission's order. Thus, the Commission must provide a reasoned analysis for why these non-jurisdictional indicators were outweighed by the remaining physical factors.

In the 2003 Jupiter Jurisdictional Order, the Commission expressly declined to consider the non-physical factors supporting a gathering function because "this is not a case where the physical factors are so ambiguous as to necessitate such an analysis." 103 F.E.R.C. ¶ 61,184 at 61,713. The non-physical factors, however, cannot be ignored when conducting the primary function test. The Fifth Circuit recognizes non-physical factors as "secondary to the physical factors" but still requires consideration when relevant to "the determinative question [of] when did gathering cease and transportation commence." *Sea Robin*, 127 F.3d at 371; *see also ExxonMobil*, 297 F.3d at 1087 (implying that the Commission should consider secondary factors in its jurisdictional analysis).

Jupiter points to the following non-physical factors: (1) the parent company, Unocal, is Jupiter's only shipper; (2) neither Jupiter nor Unocal own any other jurisdictional facilities; (3) Unocal's business activity is gathering and production; and (4) Unocal would integrate the subject facilities into its own gathering system. 105 F.E.R.C. ¶ 61,243 at 62,287. In light of the these non-physical factors, the Commission should at a minimum provide a reasoned explanation of why Jupiter's lines fail to constitute an "integral part of [Unocal's] natural gas gathering system." *Blue Dolphin Pipe Line Co.*, 58 F.E.R.C. ¶ 61103 at 61362 (1992) (holding that a similar system with larger lines and compressors performed a gathering function).

To receive judicial deference, an agency's interpretation of law must be consistent with previous agency determinations. An agency must provide a "reasoned explanation for its departure from established case law." *EP Operating Co.*, 876 F.2d at 48 (5th Cir. 1989) (comparing the Commission's quality of jurisdictional analysis for two lines owned by different companies to conclude whether the Commission should receive judicial deference). The glaring shortfall in the Commission's order is the lack of a reasoned explanation to support its disregard of the length, diameter, operating pressure, and non-physical factors of Jupiter's system, which all weigh in favor of a gathering function.

In *Williams*, the D.C. Circuit expressly questioned the Commission's policy that the jurisdictional status of an upstream pipeline determines the primary function of a downstream facility. 2006 WL 3716638 at *8, 10. In vacating the 2005 Transco Jurisdictional Order, the court intimated that once the Commission provided an adequately supported explanation for this policy, then the court would re-examine, if necessary, the merits of the Commission's decision. *Id.* at *11. Similarly, the Commission may very well have reached an accurate functional determination of Jupiter's

9

pipelines; however, under applicable Fifth Circuit law, the Commission must articulate reasons for dismissing the import of non-jurisdictional physical factors and relevant non-physical factors. *See EP Operating Co.*, 876 F.2d at 48; *Sea Robin*, 127 F.3d at 370. In this instance, we conclude that the Commission failed to provide a sufficiently reasoned explanation.

## <u>CONCLUSION</u>

For these reasons, we vacate the Commission's Order and remand for further consideration consistent with this opinion.