REVISED AUGUST 12, 2009

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 27, 2009

Charles R. Fulbruge III
Clerk

No. 07-60836

Ruben OVALLES

Petitioner

v.

Eric H. HOLDER, Jr., U.S. Attorney General

Respondent

Appeal from the United States
Board of Immigration Appeals

Before GARWOOD, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:

Ruben Ovalles (Ovalles), who filed an untimely motion to reconsider his removal order or to reopen his removal proceedings following his departure from the United States, petitions for review of an order of the Board of Immigration Appeals (BIA or Board) denying jurisdiction over his motion pursuant to 8 C.F.R. § 1003.2(d). Ovalles argues that the so-called "post-departure bar" in section 1003.2(d) is contrary to statute and therefore invalid, that the BIA unreasonably concluded that the post-departure bar trumped its sua sponte authority to reconsider decisions or reopen proceedings, that section 1003.2(d) was applied arbitrarily and capriciously in his case, and that he was deprived of his Fifth

Amendment right to due process. For the following reasons, we DENY the petition for review.

## I. FACTS AND PROCEEDINGS BELOW

Ovalles, a native and citizen of the Dominican Republic, immigrated to the United States in 1985 and eventually became a permanent legal resident. In 2003, Ovalles was convicted in Ohio of attempted possession of drugs under Ohio Revised Code Ann. §§ 2923.02, 2925.11 and sentenced to five years of probation. As a result, Ovalles was charged with removability pursuant to 8 U.S.C. §§ 1227(a)(2)(B)(i) (conviction of a controlled substance violation) and 1227(a)(2)(A)(iii) (conviction of an aggravated felony). The Immigration Judge (IJ) concluded that Ovalles was removable for a controlled substance violation pursuant to section 1227(a)(2)(B)(i), but, because he was never imprisoned, his conviction was not an aggravated felony under section 1227(a)(2)(A)(iii). As a result, the IJ determined that Ovalles was eligible for cancellation of removal under 8 U.S.C. § 1229b(a), which the IJ granted due to Ovalles's continuous work history and familial connections in the United States. The Department of Homeland Security appealed to the BIA. On March 8, 2004, the Board held that Ovalles's conviction was an aggravated felony, and therefore that Ovalles was ineligible for cancellation of removal pursuant to 8 U.S.C. § 1229b(a)(3). Ovalles was removed to the Dominican Republic on April 14, 2004.

On December 5, 2006, the Supreme Court decided Lopez v. Gonzales, which held that a first-time conviction for simple possession of drugs that is neither an illicit trafficking offense nor a federal felony does not constitute an aggravated felony for immigration purposes. 127 S.Ct. 625, 631–32 (2006). Arguing that this decision undermined the legal basis for his removal, Ovalles filed a motion with the BIA on July 27, 2007 to reconsider its March 2004 decision sua sponte, or alternatively, to reopen his removal proceedings sua

2

sponte. The BIA began by noting that Ovalles's motion, which it viewed as a motion to reopen sua sponte, was untimely. Ultimately, however, the BIA refused to consider the motion on the basis of 8 C.F.R. § 1003.2(d), which provides in relevant part: "A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States." Ovalles timely filed this petition for review.[1]

## II. DISCUSSION

### A. Standard of Review

We review the BIA's conclusions of law and constitutional issues arising therefrom de novo. See Garrido-Morato v. Gonzales, 485 F.3d 319, 322 (5th Cir. 2006). We grant the BIA's interpretation of its own regulations "'considerable legal leeway.'" Navarro-Miranda v. Ashcroft, 330 F.3d 672, 675 (5th Cir. 2003) (quoting Barnhart v. Walton, 122 S.Ct. 1265, 1269 (2002)). "However, '[w]hile an agency interpretation of a regulation is entitled to due deference, the interpretation must rationally flow from the language of the regulation.'" Id. (quoting Acadian Gas Pipeline Sys. v. FERC, 878 F.2d 865, 868 (5th Cir. 1989)).

### B. Validity of 8 C.F.R. § 1003.2(d)

Ovalles's primary contention on appeal is that the post-departure bar in 8 C.F.R. § 1003.2(d) is invalid, because it is contrary to the clear and unambiguous language of the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104–208, 110 Stat. 3009 (1996), that "[t]he alien may file one motion to reconsider" and "[a]n alien may file one motion to reopen." See 8 U.S.C. § 1229a(c)(6)(A), (c)(7)(A). In support of

---

[1]The American Immigration Law Foundation filed a brief as amicus curiae in support of Ovalles's position.

this argument, Ovalles urges this court to follow the Fourth Circuit's decision in William v. Gonzales, which held that the post-departure bar in section 1003.2(d) was invalid because it conflicted with the clear and unambiguous language of section 1229a(c)(7)(A) of IIRIRA.  See 499 F.3d 329, 331–34 (4th Cir. 2007).

Motions to reconsider and motions to reopen began as judicial creations and were later incorporated into regulations.  See Dada v. Mukasey, 128 S.Ct. 2307, 2315 (2008).  The first version of the post-departure bar on filing such motions appeared in a regulation promulgated by the Attorney General in 1952, which provided in pertinent part as follows:

> "A motion to reopen or a motion to reconsider [before the BIA] shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States.  Any departure of such person from the United States occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion."

17 Fed. Reg. 11,469, 11,475 (Dec. 19, 1952) (codified at 8 C.F.R. § 6.2); see In re Armendarez-Mendez, 24 I&N Dec. 646, 648 (BIA Oct. 6, 2008).  Since that time, the BIA has consistently interpreted the post-departure bar as a limitation on its jurisdiction to entertain motions to reopen or reconsider filed by aliens who have departed the country.  In re Armendarez-Mendez, 24 I&N Dec. at 648.

In 1961, Congress imposed a similar statutory restriction on the ability of Article III courts to hear appeals from deportation or exclusion orders filed by aliens who had already departed the country:

> "An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order."

8 U.S.C. § 1105a(c) (repealed 1996); see In re Armendarez-Mendez, 24 I&N Dec. at 649.  The law surrounding motions to reopen or reconsider changed again in

4

1996, when Congress amended the Immigration and Naturalization Act (INA) with the enactment of IIRIRA. See William, 499 F.3d at 330. IIRIRA repealed 8 U.S.C. § 1105a(c), replacing it with a new provision governing Article III review of deportation and exclusion orders that did not contain a post-departure bar. See 8 U.S.C. § 1252; see William, 499 F.3d at 330. Additionally, IIRIRA codified procedures for filing motions to reopen and motions to reconsider, incorporating several of the existing regulatory restrictions on filing those motions but, notably, excluding the post-departure bar. See 8 U.S.C. § 1229a(c); see also William, 499 F.3d at 330.

Following the enactment of IIRIRA, the Attorney General passed a new set of regulations governing motions to reopen or reconsider that, despite the repeal of 8 U.S.C. § 1105a(c) and the lack of explicit authorization in 8 U.S.C. § 1229a(c), again imposed a post-departure bar nearly identical to those contained in previous regulations:

> "A motion to reopen or a motion to reconsider [before the BIA] shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such a motion."

8 C.F.R. § 3.2(d); see 62 Fed. Reg. 10312, 10321, 10331 (Mar. 6, 1997). This regulation, which was later redesignated 8 C.F.R. § 1003.2(d), is challenged in the instant case. See 68 Fed. Reg. 9,924, 9,830 (Feb. 28, 2003).

In Pena-Muriel v. Gonzales, the First Circuit considered whether the repeal of the statutory post-departure bar applicable to the federal courts in 8 U.S.C. § 1105a(c) abrogated or otherwise signaled Congress's intent to eliminate the post-departure bar in 8 C.F.R. § 1003.23(b)(1), which applies to the

5

immigration courts and mirrors section 1003.2(d) (which applies to the BIA).[2] 489 F.3d 438, 441 (1st Cir. 2007). First, the court concluded that, because the regulatory post-departure bar existed prior to and independent of the statutory post-departure bar, the repeal of section 1105a(c) did not in itself "abrogate the Attorney General's authority to continue to enforce the limitations of 8 C.F.R. § 1003.23(b)(1)." Id. The court then went on to consider whether, in enacting IIRIRA, Congress nevertheless intended for the Attorney General to cease enforcement of the post-departure bar. Id. The court determined that IIRIRA was silent or ambiguous on the issue, therefore it accorded deference to the agency's construction of the statute under Chevron.[3] Id. at 441. Ultimately, the court went on to conclude that the continued implementation of the post-departure bar was a reasonable interpretation of the Attorney General's authority under IIRIRA. Id. at 442–43. In the course of denying Pena-Muriel's motion for rehearing, the court observed that its initial decision did not address whether the post-departure bar conflicted with 8 U.S.C. § 1229a(c)(7). Pena-Muriel v. Gonzales, 510 F.3d 350, 350 (1st Cir. 2007).

That argument was considered in William, in which a divided panel of the Fourth Circuit held that "[8 U.S.C.] § 1229a(c)(7)(A) unambiguously provides an alien with the right to file one motion to reopen, regardless of whether he is

[2]8 C.F.R. § 1003.23(b)(1) provides in relevant part as follows:

"A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion."

[3]See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 104 S.Ct. 2778, 2781–82 (1984).

6

within or without the country." 499 F.3d at 332. In examining the language of section 1229a(c)(7)(A), the court emphasized that the statute provides that "[a]n alien may file" one motion to reopen. Id. (emphasis in original). The court determined that because the statute did not include any geographical limitation when referring to "an alien," Congress clearly meant to provide the right to all aliens meeting the requirements of section 1229a(c)(7), even those who had departed the United States. Id.

The William majority bolstered its reading of section 1229a(c)(7)(A) by examining the overall structure of section 1229a(c)(7). Id. at 333. First of all, it presumed that Congress acted intentionally when it chose to incorporate other existing regulatory restrictions on an alien's right to file motions to reopen, including filing deadlines and numerical limitations, but not the post-departure bar. Id. Additionally, the majority pointed to section 1229a(c)(7)(C)(iv)(IV), which exempts alien victims of domestic violence from the usual filing deadlines for a motion to reopen if they are "physically present in the United States at the time of filing the motion." Id. It drew two conclusions from Congress's inclusion of this provision. Id. First, it reasoned that Congress's placement of a physical presence requirement in 1229a(c)(7)(C)(iv)(IV), but not in section 1229a(c)(7)(A), demonstrated Congress's intent to do so, "because where Congress 'includes particular language in one section of a statute but omits it from another section of the same Act . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Id. (quoting Clay v. United States, 123 S.Ct. 1072, 1077 (2003)). Second, the William majority observed that to adopt the Government's interpretation of section 1229a(c)(7)(A) would render section 1229a(c)(7)(C)(iv)(IV) superfluous, "for a finding that physical presence in the United States is required before any motion to reopen may be filed would

7

render the physical presence requirement expressly written into subsection (c)(7)(C)(iv)(IV) mere surplusage." Id. (citing TRW, Inc. v. Andrews, 122 S.Ct. 441, 449 (2001)). For these reasons, the William majority ultimately concluded that section 1003.2(d) directly conflicted with the plain language of section 1229a(c)(7)(A) and therefore was invalid. Id. at 334.

Chief Judge Williams wrote an extensive dissent in William, arguing that IIRIRA was silent on the issue of the post-departure bar and therefore the court should defer to the Attorney General's interpretation of the statute under Chevron. See id. at 334–45. He placed special emphasis on the fact that, prior to the passage of section 1229a(c)(7)(A), a similar regulation limiting aliens to only one motion to reopen worked alongside the post-departure bar to restrict the ability of aliens located within the country from filing repeated motions to reopen. Id. at 336 (citing 8 C.F.R. § 3.2(c)(2)). On that basis, Chief Judge Williams observed that "if Congress intended to repeal the departure bar, it would have done so by doing more than merely repeating the numerical limitation already contained in the regulations, a limitation that was designed to operate alongside the departure bar to promote finality in deportation proceedings." Id. at 336–37. Therefore, he concluded that the majority had "impute[d] more meaning to the codified numerical limitation than the words of the statute can bear." Id. at 336.

In addition, the Chief Judge rejected the majority's reliance on section 1229a(c)(7)(C)(iv)(IV), the exception to the filing deadline for alien victims of domestic violence, as a basis for concluding that Congress intended to eliminate the post-departure bar. Id. at 337–38. First of all, he observed that section 1229a(c)(7)(C)(iv)(IV) and the physical presence requirement contained therein were added years after the passage of IIRIRA as part of two statutes enacted in

a broad legislative effort to "snuff out sex slave trade and domestic violence."[4] Id at 337. Therefore, Chief Judge Williams concluded that it was a mistake to rely on section 1229a(c)(7)(C)(iv)(IV) as a means of interpreting Congress's intent in passing IIRIRA, as the two were "connected neither in time nor purpose." Id. Second, Chief Judge Williams argued that section 1229a(c)(7)(C)(iv)(IV) could just as easily be interpreted as an exception to the second prong of the post-departure bar regulation, which would otherwise result in the automatic withdrawal of a motion to reopen filed by an alien victim of domestic violence who departed the country after filing. Id. Ultimately, Chief Judge Williams concluded that IIRIRA was silent as to whether aliens were permitted to file post-departure motions to reopen. Id. at 342. Therefore, he afforded the agency deference under step two of Chevron and found that the post-departure bar in section 1003.2(d) was a valid exercise of the Attorney General's rulemaking authority.[5] Id. at 342–44.

Ovalles urges this court to adopt the analysis of the majority in William and to extend the majority's reasoning beyond motions to reopen to encompass motions to reconsider under section 1229a(c)(6). Without passing judgment on the merits of the Fourth Circuit's decision in William, we decline to do so. In asking us to invalidate section 1003.2(d), Ovalles invokes statutory provisions

---

[4]The exception for victims of domestic violence was created with the passage of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106–386, 114 Stat. 1464 (2000), and originally made no mention of the alien's location at the time of filing. See 8 U.S.C. § 1229a(c)(6)(C)(iv) (2005); William, 499 F.3d at 337. The physical presence requirement was added later when Congress enacted the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109–62, § 825, 119 Stat. 2960 (2006). William, 499 F.3d at 337.

[5]We also note that BIA itself has explicitly rejected the holding in William and refused to abide by that decision outside of the Fourth Circuit. See In re Armendarez-Mendez, 24 I&N Dec. at 653–60.

that offer him no relief. Section 1229a(c)(6)(B) provides that a motion to reconsider "must be filed within 30 days of the date of entry of a final administrative order of removal," and section 1229a(c)(7)(C)(i) mandates that a motion to reopen "shall be filed within 90 days of the date of entry of a final administrative order of removal." The BIA entered Ovalles's final order of removal on March 8, 2004, yet Ovalles did not file his motion to reconsider or to reopen until July 27, 2007. Thus, over three years had passed from the entry of the BIA's final administrative order of removal before Ovalles filed his motion. Moreover, even if we were to start the running of the allowed time period when the Supreme Court issued Lopez on December 6, 2006, nearly eight months would have passed before Ovalles filed his motion with the BIA. Therefore, Ovalles's motion would still have been well outside both the thirty-day deadline for filing motions to reconsider and the ninety-day deadline for filing motions to reopen.

This key fact distinguishes the present case from William. See Castillo-Perales v. Mukasey, 298 F. App'x 366, 370 n.3 (5th Cir. Nov. 3, 2008) (unpublished). In William, the petitioner filed a motion to reopen within ninety days after the vacatur of the state conviction for which he was deported. See 499 F.3d at 331. Apparently, the Fourth Circuit determined that the vacatur restarted the limitations period, and the Government did not argue that the motion was untimely. See id. 334 n.5. Therefore, unlike Ovalles, William filed his motion to reopen within the statutory deadline and was entitled to whatever rights the court determined were available to him under section 1229a(c)(7). See id. at 331.

Thus, because sections 1229a(c)(6) and 1229a(c)(7) of IIRIRA do not grant Ovalles the right to have his facially and concededly untimely motion heard by the BIA, he cannot rely on those statutory provisions as a basis for contending

10

that the BIA was required to give sua sponte consideration to the merits of his July 27, 2007 motion to reconsider or reopen its March 2004 decision.

B.  Interplay between 8 C.F.R. § 1003.2(a) and 1003.2(d)

Ovalles also contends that the BIA unreasonably interpreted the post-departure bar in section 1003.2(d) as trumping its sua sponte authority to reopen or reconsider cases under 8 C.F.R. § 1003.2(a).  Section 1003.2(a) provides in relevant part as follows: "The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." (emphasis added).

Citing the Eleventh Circuit's decision in Contreras-Rodriguez v. U.S. Atty. Gen., 462 F.3d 1314, 1317 (11th Cir. 2006), Ovalles asserts that the BIA's sua sponte authority to reconsider or reopen cases overrides the post-departure bar in section 1003.2(d).  However, Contreras-Rodriguez is distinguishable, because that case involved an alien who was removed in absentia and the special provisions of sections 1229(a)(c)(7)(iii) and 1229(a)(5)(C).  462 F.3d at 1317; see In re Mascoe, A44 500 897, 2007 WL 3318162 (BIA Sept. 25, 2007) (unpublished).  Moreover, the court limited the IJ's and the BIA's jurisdiction upon reopening the proceedings to considering only whether the alien had received sufficient notice of the removal proceedings.  Contreras-Rodriguez, 462 F.3d at 1317.

More importantly, this argument is foreclosed by our decision in Navarro-Miranda v. Gonzales, which is directly on point.  See 330 F.3d at 675–76.  In Navarro-Miranda, as is arguably the case here, the petitioner was removed under 8 U.S.C. § 1227(a)(2)(A)(iii) for an offense (driving while intoxicated) that was later determined not to be an aggravated felony under the INA.  Id. at 674. Navarro-Miranda moved to reopen his removal proceedings by invoking the BIA's authority to reopen sua sponte "at any time" under 8 C.F.R. § 3.2(a)

11

(predecessor to section 1003.2(a)). Id. at 675. Despite the broad language used in section 3.2(a), the BIA determined that it lacked jurisdiction under the post-departure bar in 8 C.F.R. § 3.2(d) (predecessor to section 1003.2(d)). Id. We upheld that decision, concluding that "the BIA's reasoning that the prohibition on motions to reopen stated in § 3.2(d) overrides its § 3.2(a) power to reopen on its own motion is a reasonable interpretation of the language of these two regulations." Id. at 676.

Moreover, we note that neither section 1229(a)(c)(6) nor section 1229(a)(c)(7) speak to sua sponte reopening or reconsideration, and certainly not respecting "motions" to do so filed after the deadlines specified in those sections.

Therefore, because we find Contreras-Rodriguez distinguishable and are bound by our decision in Navarro-Miranda, we conclude that the BIA acted reasonably in determining that it lacked the sua sponte authority under section 1003.2(a) to reconsider or reopen Ovalles's case due to the post-departure bar in section 1003.2(d).

C. Application of 8 C.F.R. § 1003.2(d) to Ovalles

Ovalles contends that the BIA acted arbitrarily and capriciously in applying section 1003.2(d) to deny jurisdiction over his motion. We disagree.

First, Ovalles argues that the BIA was required to consider his appeal because his order of removal was based on a legal determination that was later found to be erroneous by the Supreme Court. In Lopez, the Court held that, in order to constitute an aggravated felony for immigration purposes, a drug conviction must either be an illicit trafficking crime or punishable as a federal felony under the Controlled Substances Act. 127 S.Ct. at 631–32. Thus, because he was convicted of attempted possession, which is neither illicit trafficking nor a federal felony, Ovalles contends that his conviction was not an aggravated felony and he is eligible for relief from removal under 8 U.S.C. § 1229b(a)(3). In

12

support, Ovalles cites to several cases from other jurisdictions where the courts rejected application of the statutory post-departure bar in section 1105a(c) "where the departure was not legally executed or otherwise did not comply with due process requirements." E.g., Mendez v. INS, 563 F.2d 956, 958 (9th Cir. 1977); Juarez v. INS, 732 F.2d 58, 59–60 (6th Cir. 1984); Joehar v. INS, 957 F.2d 887, 889 (D.C. Cir. 1992). However, because this court has explicitly rejected that line of cases, this argument is unavailing.[6] See Quezada v. INS, 898 F.2d 474, 476 (5th Cir. 1990).

Second, Ovalles contends that, by its own terms, section 1003.2(d) does not apply in his case. Section 1003.2(d) precludes the BIA from hearing motions filed by "a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States." (emphasis added). Relying on the Ninth Circuit's decision in Lin v. Gonzales, 473 F.3d 979, 982 (9th Cir. 2007)), Ovalles contends that section 1003.2(d) does not apply to him because he no longer "is" the subject of removal proceedings. In Lin, the Ninth Circuit considered whether the BIA erred in affirming an IJ's application of the post-departure bar in 8 C.F.R. § 1003.23(b)(1) to deny jurisdiction over a motion to reopen filed by an alien who illegally reentered the country after being removed. 473 F.3d at 981–82. The Lin court held:

> "The regulation is phrased in the present tense and so by its terms applies only to a person who departs the United States while he or she 'is the subject of removal . . . proceedings.' 8 C.F.R. § 1003.23(b)(1) (emphasis added). Because petitioner's original

---

[6]Moreover, in Navarro-Miranda, we found that "at the time that Navarro's final order of removal was issued, his DWI conviction was considered to be an aggravated felony. Accordingly, his removal order was legally executed. . . ." 330 F.3d at 674–75. Therefore, even if we were to adopt the reasoning espoused by the Ninth Circuit in Mendez, our own precedent undermines Ovalles's argument that his removal was illegally executed due to a subsequent change in the law.

13

removal proceedings were completed when he was removed to China, he did not remain the subject of removal proceedings after that time. While the regulation may have been intended to preclude aliens in petitioner's situation from filing motions to reopen their completed removal proceedings, the language of the regulation does not unambiguously support this result. Because ambiguity must be construed in favor of the petitioner, we decline to adopt the government's construction of the regulation . . . ."

Id. at 982. Ovalles analogizes his own situation to that of Lin's and urges that we apply the Lin court's reasoning to the BIA's post-departure bar in section 1003.2(d), as the Ninth Circuit did in Reynoso-Cisneros v. Gonzales. See 491 F.3d 1001, 1002 (9th Cir. 2007).

The Government argues that the Ninth Circuit in Lin and Reynoso-Cisneros misconstrued the meaning of sections 1003.23(b)(1) and 1003.2(d). The Government contends that it is illogical to interpret section 1003.2(d) as only applying to aliens who are currently the subject of removal proceedings, because such individuals have no need or even ability to file motions to reconsider or reopen: if removal proceedings are still ongoing, there is nothing to reconsider or reopen. This argument is consistent with the position taken by the BIA in In re Armendarez-Mendez, in which the Board explicitly rejected Lin and Reynoso-Cisneros and declared its intention not to follow those decisions, even within the Ninth Circuit. See 24 I&N Dec. at 650–53 ("[T]he filing of a motion to 'reopen' presupposes that the administrative proceedings have been 'closed' or completed . . . ."). The BIA also criticized the notion that the post-departure bar was only meant to apply to aliens who depart the country during the course of removal proceedings, because such a reading would render the post-departure withdrawal provision in sections 1003.2(d) and 1003.23(b)(1) superfluous. Id. at 652.

We are persuaded by the arguments put forth by the Government here and

14

by the BIA in In re Armendarez-Mendez. Further, the Ninth Circuit's reading of sections 1003.2(d) and 1003.23(b)(1) is necessarily inconsistent with our decision in Navarro-Miranda and that of the First Circuit in Pena-Muriel. See Navarro-Miranda, 330 F.3d at 674–76; see also Pena-Muriel, 489 F.3d at 440–43. Those cases upheld the application of the post-departure bar of section 1003.23(b)(1) (Pena-Muriel) and section 1003.2(d) (Navarro-Miranda) to deny jurisdiction over motions to reopen filed by aliens whose removal proceedings were already closed. Id.

We conclude that the post-departure bar on motions to reconsider and to reopen applies and was intended to apply to aliens who depart the country following the termination of their removal proceedings.[7] Therefore, the BIA did not act arbitrarily and capriciously in applying section 1003.2(d) to Ovalles, despite the fact that the legal basis for his removal was later determined to be erroneous and his removal proceedings were concluded at the time he filed his motion.

D. Due Process under the Fifth Amendment

Finally, Ovalles contends that the BIA violated his Fifth Amendment right to due process when it denied jurisdiction over his motion to reconsider or reopen under section 1003.2(d). See U.S. CONST. amend. V. Ovalles asserts that he was unconstitutionally deprived of his liberty interest in "remaining, and/or returning to this country, after having been wrongfully removed."

A permanent resident alien living in the United States has a right to due process in deportation proceedings. Landon v. Plasencia, 103 S.Ct. 321, 330

---

[7]Additionally, we note that, unlike the present case, the motion to reopen at issue in Lin was not time-barred, because the petitioner was seeking asylum based on changed circumstances in his country of nationality and therefore fell under the exceptions to the filing deadlines for such motions laid out in 8 U.S.C. § 1229a(c)(7)(C)(ii) and 8 C.F.R. § 1003.2(c)(3)(ii). See 473 F.3d at 981; Castillo-Perales, 298 F. App'x at 370 n.3.

(1982). However, a permanent resident alien who has departed the country for an extended period of time, even voluntarily, may lose the special protected constitutional status afforded "an alien continuously residing and physically present in the United States." Id.; see also Chew v. Colding, 73 S.Ct. 472, 477 (1953) ("It is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, he is a person within the protection of the Fifth Amendment." (emphasis added)). Thus, we are not convinced that Ovalles had a due process right to have his untimely motion to reconsider or reopen heard by the BIA.

Moreover, a change in the legal status of an underlying conviction does not create a constitutional right to reopen one's removal proceedings. See Pena-Muriel, 489 F.3d at 443. In Pena-Muriel, the First Circuit considered whether the petitioner's due process rights were violated when the IJ invoked the post-departure bar in section 1003.23(b)(1) to deny jurisdiction over a motion to reopen filed after the petitioner's underlying conviction was vacated. Id. at 443 The court observed that "the fact that a vacatur may be an 'appropriate' basis for reopening a deportation order does not establish a due process right to such reopening after one has departed the country." Id. The court noted that Pena-Muriel received adequate due process in the proceedings leading up to his removal and that his conviction was a removable offense. Id. As such, the court rejected his claim that the he was subsequently denied due process by the operation of the post-departure bar:

> "Now Pena-Muriel seeks to reopen proceedings that ended roughly ten years ago, on the basis of a vacatur that occurred five years after he voluntarily removed himself from the country. Due process does not require continuous opportunities to attack executed removal orders years beyond an alien's departure from the country. Indeed, there is a strong public interest in bringing finality to the deportation process."

16

Id.

Likewise, we conclude that, to whatever extent Ovalles may have been protected by the Fifth Amendment, his constitutional rights were not violated when the BIA refused to consider his untimely motion to reconsider or reopen pursuant to the post-departure bar in section 1003.2(d). Ovalles was afforded sufficient due process in his initial removal proceedings, and he was found removable based on an offense that, at the time, rendered him ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3). The fact that the law changed after Ovalles was removed does not mean that he was denied due process when he was prevented from reopening his proceedings years after his departure from this country, especially when he concededly did not request reopening with the specified allowed time even as calculated from the time the law changed. In this instance, the Government's interest in the finality of removal proceedings outweighed whatever liberty interest Ovalles may have had in returning to the United States. See Mathews v. Eldridge, 96 S.Ct. 893, 903 (1976).

### III. CONCLUSION

We find that, because 8 U.S.C. § 1229a(c) does not grant Ovalles the right to file an untimely motion to reconsider or reopen his case, he may not rely on that statute to challenge the validity of the post-departure bar in 8 C.F.R. § 1003.2(d). Further, we conclude that the BIA reasonably interpreted the post-departure bar in section 1003.2(d) as overriding its sua sponte authority to reconsider or reopen Ovalles's case under 8 C.F.R. § 1003.2(a). We also hold that section 1003.2(d) was not applied arbitrarily and capriciously to Ovalles. Finally, we conclude that, to the extent that Ovalles's possessed a liberty interest in returning to the United States that was protected by the Fifth Amendment, the BIA did not violate his due process rights by refusing to

17

consider his untimely post-departure motion to reconsider or reopen. Therefore, the petition for review is DENIED.

Judge Haynes concurs in the result.