# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 4, 2021

Lyle W. Cayce
Clerk

No. 19-60553

Melvin Alexis Cortez-Ramirez,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A206 773 085

Before Owen, *Chief Judge*, Jolly, and Dennis, *Circuit Judges*.
Per Curiam:*

Petitioner Melvin Cortez-Ramirez entered the United States illegally in 2014. After he was charged with being subject to removal, he filed an application for asylum, a petition for withholding of removal, and an application for protection under the United Nations Convention Against Torture. All of these requests for relief were denied, first by United States

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-60553

Customs and Immigration Services, then by an Immigration Judge, and finally by the Board of Immigration Appeals. Cortez-Ramirez petitions this court for review. We deny the petition.

## I.

Petitioner Melvin Cortez-Ramirez ("Petitioner" or "Cortez-Ramirez") is a citizen of El Salvador. On May 25, 2014, Cortez-Ramirez illegally entered Texas without having been admitted or paroled. Agents of the Department of Homeland Security subsequently served Cortez-Ramirez with a notice to appear before an Immigration Judge ("IJ"). He was charged with being subject to removal, as an alien unlawfully present, under 8 U.S.C. § 1182(a)(6)(A)(i).

Petitioner filed an application for asylum, a petition for withholding of removal, and an application for protection under the United Nations Convention Against Torture ("CAT"). As the basis of these requests, Petitioner claims that he was and reasonably fears that he would again be subjected to persecution in El Salvador because of his religious beliefs, his political opposition to criminal gangs, and his membership in his family and in the social group "Salvadoran Evangelical Young Males Who Oppose Criminal Activity for Moral and Religious Reasons."

United States Customs and Immigration Services ("USCIS") denied all of Petitioner's requests for relief. A hearing was then held before an Immigration Judge, who likewise denied Petitioner's requests for relief and ordered him removed to El Salvador. Petitioner appealed this decision to the Board of Immigration Appeals ("BIA" or "Board"). The Board dismissed Petitioner's appeal. This petition for review followed.

## II.

We review questions of law *de novo*. *Miresles-Zuniga v. Holder*, 743 F.3d 110, 112 (5th Cir. 2014). The BIA's interpretation of immigration statutes is entitled to deference according to the rubric set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Garcia-Carias v. Holder*, 697 F.3d 257, 263 (5th Cir. 2012). Factual findings of the Board are reviewed under the substantial evidence standard. Such findings are accepted as true if they are based upon record evidence and are "substantially reasonable." *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 350 (5th Cir. 2002).

## III.

Petitioner applied for asylum pursuant to 8 U.S.C. § 1158, which provides that "[t]he Secretary of Homeland Security or the Attorney General may grant asylum to an alien . . . if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." That provision defines "refugee" as follows:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution *on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .*

8 U.S.C. § 1101(a)(42)(A) (emphasis added).

Cortez-Ramirez argues that El Salvador's criminal gangs targeted him because of his religion (evangelical Christianity), an imputed political opinion (opposition to criminal gangs), and his membership in two particular social

groups (his nuclear family and "Salvadoran Evangelical Young Males Who Oppose Criminal Activity for Moral and Religious Reasons"). The IJ noted that the imputed political opinion proffered by Cortez-Ramirez, i.e., that "gang members should not have the utmost authority in Salvadoran society," was merely the sort of generalized opposition to crime normally held by law-abiding citizens. The IJ, relying on prior decisions of the BIA, also found that "Salvadoran Evangelical Young Males Who Oppose Criminal Activity for Moral and Religious Reasons" was not a cognizable particular social group ("PSG") within the meaning of 8 U.S.C. § 1101(a)(42)(A).

The IJ also found that the various harms and misfortunes suffered by Cortez-Ramirez in El Salvador appeared to be isolated incidents of criminality perpetrated by different individuals or groups over a number of years and concluded that they did not rise to the level of "persecution," which the BIA has interpreted to mean "harm or suffering [that is] inflicted upon an individual in order to punish him for possessing a belief or characteristic a persecutor seeks to overcome. The word does not embrace harm arising out of civil strife or anarchy." *Matter of Acosta*, 19 I. & N. Dec. 211, 223 (BIA 1985).

The biggest problem with Cortez-Ramirez's argument, however, as both the IJ and the BIA found, was that he could not establish a sufficient nexus between the past harms he allegedly suffered or the persecution he allegedly fears and any protected ground. What constitutes a sufficient nexus is set forth at 8 U.S.C. § 1158(b)(1)(B)(i): "[T]he applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be *at least one central reason* for persecuting the applicant." (emphasis added). We have adopted the BIA's interpretation of this provision that "although a statutorily protected ground need not be the only reason for harm, it cannot be incidental, tangential, superficial, or

subordinate to another reason for harm." *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (cleaned up).

Here are the alleged incidents of persecution to which Petitioner testified, along with any evidence of nexus to a protected ground:

1. The first alleged incident is the killing of Petitioner's cousin Dennis by the Mara 18 gang. Petitioner stated that the gang killed him because he was a member of another evangelical church, but, when asked why he thought that, stated that "[w]ell, they had attempted to recruit him into the gang, and he was now a member of the church." Petitioner does not allege that Dennis was targeted because he belonged to Petitioner's family.

2. Petitioner was allegedly beaten at a bus stop. He testified that three supposed gang members approached Petitioner and asked if he was in a gang. Petitioner responded that he was a member of a church. The three supposed gang members then allegedly proceeded to beat and rob Petitioner.

3. Petitioner alleges that his cousin Oscar was killed in retaliation for leaving the Mara 18 gang.

4. Petitioner testified that he and his brother were attacked and beaten while they were walking home from shop class. Petitioner speculates that the assailants were members of a gang that had a rivalry with the Mara 18 and did not want them in their neighborhood.

5. Petitioner testified that he was beaten and threatened by classmates after transferring to a new school. By Petitioner's own account, this aggression was provoked by his refusal to join the MS-13 gang. He testified that, when the other students would ask him to join their gang, he would respond, "I can't. My religion and my beliefs don't allow it." The gang members would supposedly respond by physically attacking Petitioner

No. 19-60553

and threatening him. This is similar to incident #2 in that it is difficult to completely disentangle whether the attacks were provoked by Petitioner's refusal to join the gang or by his comments about his religious beliefs.

6.    Petitioner testified that, while traveling with his mother on a bus, two gang members forced them off the bus and proceeded to beat Petitioner. When his mother attempted to intervene, the men told her that they did not want any problems with her. Petitioner testified, "[t]hey were after me, not my mother." As the IJ noted, this actually supports the conclusion that the attack was not motivated by animus toward Petitioner's family.

7.    Petitioner testified that a female friend and fellow Christian testified in church that gang members tore the earrings out of her ears while she was traveling on a bus. This exchange then occurred between Petitioner and the IJ:

> IJ: It sounds like she wasn't particularly targeted. It sounds like they got on the bus to rob the bus, and she was one of the victims on the bus.

> Cortez-Ramirez: Exactly.

The only testimony supporting any degree of nexus between a harm alleged to have been perpetrated against Petitioner and a protected ground is in connection with incidents #2 and #5. Petitioner testified, with respect to both incidents, that he had made a comment about his religious beliefs before being attacked by gang members. While it is possible that these allusions to his religious beliefs were what provoked the gang members in both or one incident, we find the more likely provocation to have been Petitioner's lack of gang affiliation or his refusal to join a gang.

We review the BIA's determination that Petitioner did not establish that a protected ground was "at least one central reason" for his alleged past

6

No. 19-60553

persecution or allegedly feared future persecution under the substantial evidence standard. Here the BIA's determination was reasonable and based upon the evidence in the record. Only Petitioner's testimony, in connection with alleged incidents #2 and #5, regarding the statements he made to gang members about his religious beliefs could possibly support the conclusion that he was targeted because of his religion, and there are more plausible interpretations of those alleged incidents. There is nothing in the record to support a nexus between any of the alleged instances of violence and any other protected ground. Because one could reasonably conclude that these alleged instances of violence were unrelated, or only tangentially related, to Petitioner's religion or any other protected ground, the BIA's finding that Cortez-Ramirez failed to establish sufficient nexus is supported by substantial evidence.[1] The BIA thus did not err in finding that Cortez-Ramirez failed to establish eligibility for asylum under 8 U.S.C. § 1158.

## IV.

The standard for establishing entitlement to mandatory withholding of removal under 8 U.S.C. § 1231(b)(3)(A) is higher than the standard for establishing eligibility for discretionary asylum relief. The "well-founded fear" standard, from the asylum context, can be satisfied by a finding that there exists a ten-percent likelihood of future persecution. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987). By contrast, to establish entitlement to mandatory withholding of removal, an applicant must prove that there is a greater than fifty-percent chance that his life or freedom would be threatened on account of a protected ground if he were removed. 8 U.S.C.

---

[1] The BIA did not find it necessary to address whether Petitioner's proposed PSGs were cognizable because it affirmed the IJ purely on the basis of insufficient nexus. We affirm on the same basis and likewise decline to address whether the proposed PSGs are cognizable.

§ 1231(b)(3)(A); *INS v. Stevic*, 467 U.S. 407, 429–30 (1984). Petitioner accepts this fact but contends that, while he must establish a higher likelihood of persecution in the withholding context, the standard for establishing sufficient nexus is lower.

In support of this argument, Petitioner cites the out-of-circuit case of *Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017) (holding that, in the withholding context, a protected ground need only be "a reason" why an applicant's life or liberty would be threatened rather than "one central reason," as in the asylum context). Petitioner also filed a Rule 28(j) letter bringing to the court's attention the recently decided case of *Guzman-Vazquez v. Barr*, 959 F.3d 253, 271–72 (6th Cir. 2020), in which the Sixth Circuit concurred with the Ninth Circuit's reasoning and interpretation in *Barajas-Romero*. This circuit, however, has already adopted the contrary "one central reason" interpretation. *Shaikh*, 588 F.3d at 864. Therefore, under binding Fifth Circuit precedent, the same standard for establishing sufficient nexus applies to applications for asylum and applications for mandatory withholding of removal. The BIA thus did not abuse its discretion when it found that Petitioner necessarily could not establish entitlement to mandatory withholding of removal given that he could not meet the lower standard applicable to claims of eligibility for asylum.

## V.

To establish entitlement to protection under the CAT, an applicant must prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture," within the meaning of the CAT, includes only severe pain or suffering that is inflicted "by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

No. 19-60553

The BIA found that Petitioner had suffered no past harm rising to the level of torture and that he had failed to establish that he would more likely than not be tortured if removed to El Salvador. The BIA commented that "[Petitioner] merely assumes that all Salvadoran authorities are corrupt and would not protect him if gang members tried to torture him." Petitioner testified that alleged incidents #1–3 were reported to the police and that they took no action. This is the only evidence to support Petitioner's contention that, if he is tortured by gangs upon removal to El Salvador, a mere possibility the likelihood of which is unknown, Salvadoran authorities will acquiesce or remain willfully blind. This modicum of evidence is insufficient to meet Petitioner's burden. *See Matter of J-F-F-*, 23 I. & N. Dec. 912, 917 (A.G. 2006) ("If the evidence is inconclusive, the applicant has failed to carry his burden."). The determination of the BIA that Petitioner failed to establish entitlement to relief under the CAT was reasonable and based upon the evidence in the record.

## VI.

Cortez-Ramirez professes to be a devout Christian. We have no reason to doubt him. He testified that he and his family suffered a great deal at the hands of criminal gangs in his native El Salvador. We have no reason to doubt this either. These two things, however, appear unrelated. We see little evidence that the gangs that allegedly harassed Cortez-Ramirez were motivated to do so by his religion or any other protected ground. Certainly, we do not find evidence sufficient to overturn the decision of the Board.

The petition for review is DENIED.